[S. F. No. 1379.    Department Two.—January 19, 1899.]

JOHN W. DENNING, Respondent, v. STATE of CALIFOR-
NIA, Appellant.

NEGLIGENCE OF HARBOR COMMISSIONERS—INSECURE LADDER UPON TUG-
    BOAT—INJURY TO EMPLOYEE—LIABILITY OF STATE.—The state is not
    liable for damages to an employee of the board of state har-

bor commissioners, engaged in attending to fire-alarm duty upon a tug-boat belonging to the state and used by the board, though such damage resulted from the alleged negligence of the board, in permitting a ladder thereon to be insecurely fastened, to the injury of such employee.

ID.—ACT OF 1893—STATUTORY CONSTRUCTION.—The act of 1893 (Stats. 1893, p. 37) allowing actions upon contract or for negligence against the state, where the claims thereon are not allowed by the state board of examiners, did not create any liability or cause of action against the state where none existed, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted.

ID.—GOVERNMENTAL FUNCTIONS OF HARBOR COMMISSIONERS.—The harbor commissioners exercise governmental functions in the discharge of the duties enjoined upon them by law, and the fact that the board is authorized to collect tolls and charges for dockage and wharfage, to such extent as will enable them to discharge the duties required of them by law, does not affect the character of the board as a governmental agency, or convert its action into a mere business enterprise. The protection against fires, or the extinguishment of fires, upon a vessel belonging to the state in the control of the harbor commissioners, is the exercise of a purely governmental function on their part, in the exercise of which the state is not responsible for an injury to a person employed by them for that purpose, caused by negligence on their part.

ID.—ACTION EX DELICTO—MASTER AND SERVANT—NEGLIGENCE.—An action for negligence of a master not growing out of the contract of employment of the servant, but merely growing out of the relation existing between them, and arising from the violation of a duty not enjoined by the contract, and the damages for which cannot be estimated by any rule or standard fixed by the contract, is an action not *ex contractu* but *ex delicto,* and is in tort.

ID.—EMPLOYMENT BY STATE—RISKS ASSUMED BY EMPLOYEE.—An employee, in entering the service of the state, assumes all the risks attending his employment, whether arising from its ordinary perils, or resulting from the negligence or misfeasance of other servants of the state.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

W. F. Fitzgerald, Attorney General, W. H. Anderson, Assistant Attorney General, and H. E. Carter, Deputy Attorney General, for Appellant.

R. R. Bigelow, Henley & Costello, and Edward J. Banning, for Respondent.

THE COURT.—The plaintiff, Denning, was employed by the board of state harbor commissioners as a night deckhand upon a tug-boat—the "Governor Irwin" —belonging to the state, and used by said board.    Among other duties of the plaintiff as a deckhand, it is alleged he was required to place lights on the top of the cabin on each side, and for this purpose climbed a ladder eight or nine feet high reaching from the deck to the top of the cabin; that the ladder was insecurely fastened and became detached at one side and caused the plaintiff to fall, whereby he sustained serious injuries, and to recover damages therefor he brought this action, alleging that it was caused by the negligence of the defendant.

The defendant demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action.    It was overruled by the court, and the defendant answered.    A jury trial was had and the plaintiff had judgment, from which and from an order denying a new trial the defendant appeals.

The most important question in the case is whether the state is liable for the negligence of the board of state harbor commissioners, whereby the plaintiff, an employee, it is alleged, was injured.

This question was raised by the defendant by demurrer to the complaint, by motion for nonsuit, by a request to instruct the jury, and by a specification that the evidence does not justify the ·verdict.

The complaint alleges that the plaintiff was employed by said board "as a night deckhand on a steam tow-boat owned by the state of California and operated by it in and upon the waters of the bay of San Francisco through its servants, the said board of state harbor commissioners"; but for what specific purpose it was so operated is not alleged.    Upon this subject, however, there was some evidence.    Captain Farley, who was in the immediate command of the boat at and before the time of the accident, testified:    "There are two boats and three crews.    The day crew do the towing and attend fires, in case fire comes in, and the night crew does nothing but attend fire duty at night,

except every third Sunday and every third holiday the night crew is on in the daytime"; and the plaintiff testified: "I was night hand on that boat in case of fire alarms"; and again: "The boat was head on at the time the accident happened, lying at the side of a wharf ready for action when the alarm came in. The boat was tied up to a little dock at the end of Mission street."

The point made by appellant in the several ways above mentioned is that the boat was used as a governmental agency in promoting public interests, and that in such case the state is not liable for the negligence of its agents, the board of state harbor commissioners, or of its employee in the immediate control of the vessel.

To this the respondent replies: 1. That the legislature intended by the act of February 28, 1893, to make the state liable for the negligence of its officers and agents to the same extent that other corporations are liable; and 2. That if the state is not responsible for the negligence of their officers or agents in the discharge of a strictly governmental duty, that it is responsible for their negligence while they are in the discharge of purely administrative or business functions, and that they were so engaged at the time the plaintiff was injured.

The first section of the act of 1893, relied upon by respondent, is as follows: "All persons who have, or shall hereafter have, claims on contract or for negligence against the state not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment. The rules of practice in civil cases shall apply to such suits, except as herein otherwise provided." (Stats. 1893, p. 57.)

This statute has been considered by this court in at least two cases, arising under different facts, and in both it was held that said statute did not create any liability or cause of action against the state where none existed before, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted. (*Chapman v. State*, 104 Cal. 690; 43 Am. St. Rep. 158; *Melvin v. State*, 121 Cal. 16.) Respondent's first point cannot, therefore, be sustained.

Respondent's second contention concedes that an action will

not lie against the state for injuries caused by the negligence of its officers or agents in the discharge of a purely governmental duty, but it is contended that said board was not engaged in the discharge of a purely governmental power, but was engaged in the discharge of a purely business function.

By section 2504 of the Political Code, as amended in 1889 (Stats. 1889, p. 380), it is provided that "the commissioners shall have possession and control of that portion of the bay of San Francisco, together with all the improvements, rights, privileges, easements and appurtenances connected therewith," for the purposes therein provided. Among other things, they are required to construct such number of wharves as the wants of commerce may require and to repair and maintain all the wharves, piers, quays, landings, and thoroughfares, and to make such improvements as may be necessary for the safe landing, loading and unloading and protection of all classes of merchandise, and for the safety of passengers passing into and out of the city of San Francisco by water; to construct a seawall, dredge slips, and docks to a depth that will admit of the free ingress and egress of all classes of water craft, to perform which dredging the board is authorized to purchase or construct dredging machines, scows, steam tugs, and the necessary machinery, and employ men for operating the same. Said board is also authorized to fix and regulate from time to time the rates of dockage, wharfage, cranage, tolls and rents, and collect such amount of revenue therefrom as will enable the commissioners to perform the duties required of them by the act, and for the purpose of collecting such revenue the board is authorized to appoint wharfingers and other officers. The board is also authorized to make rules and regulations in relation to the mooring and anchoring of vessels in said harbor, providing and maintaining free, open, and unobstructed passageways for steam ferryboats and other steamers navigating the waters of the bay, so that they can make their trips without impediment from vessels at anchor or other obstacles, besides many other things which need not be mentioned.

Article 15 of the constitution contains the following provisions:

"Section 1. The right of eminent domain is hereby declared to exist in the state to all frontages on the navigable waters of the state.

"Sec. 2. No individual, partnership, or corporation claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this state shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this state shall be always attainable for the people thereof.

"Sec. 3. All tide lands within two miles of any incorporated city or town in this state and fronting on the waters of any harbor, estuary, bay, or inlet used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations."

These provisions of the constitution clearly show that the state has retained the control of the harbors and frontages thereon for the use and benefit of the people, for the promotion of commerce and the general benefit of the body politic, and not as a mere business enterprise through which profits may accrue to the state treasury; and the statute creating the state board of harbor commissioners is intended and adapted to the execution of this purpose. It gives, it is true, various powers to that board, and imposes upon it various duties, some of them of a character which, under certain circumstances, may give a cause of action against the state. The construction of seawalls, wharves, piers, boats, et cetera, require contracts for material and labor, and the state is liable upon its contracts. And so the board is authorized to conduct the business of a wharfinger, collecting tolls and charges for loading and unloading freight upon its wharves, storage thereon, et cetera, a business that might be conducted by an individual or private corporation, but all such business necessarily involves matters of contract upon which the state may become liable. But the powers and duties of the board are diversified. It has control of the bay and of the vessels using it; keeping open passageways for the ferryboats; controlling the anchorage of vessels; removing vessels from the wharves and piers when unloaded, and the general care of all the property belonging to the state and connected with the wharves and piers, or

CXXIII CAL.—21

used by said board. These duties are of a police character and purely governmental.

The fact that the board is authorized or required to collect tolls and charges for dockage and wharfage to such extent "as will enable the commissioners to discharge the duties required of them by the act" does not affect its character as a governmental agency. In *Melvin v. State, supra,* the plaintiff was a visitor at the state fair conducted by the state board of agriculture, and was injured by the seats giving way, the seats being insecure through their negligent and insecure construction. The board was authorized to charge, and did charge, and receive fees for admission, but it was said by this court, after stating that fact: "It does not follow, however, that the society is organized for gain. It exists for the sole purpose of promoting the public interest in the business of agriculture and kindred objects. It is an agency of the government, and in no sense an organization for pecuniary profit to the state." (Citing *Daggett v. Colgan,* 92 Cal. 56; 27 Am. St. Rep. 95.) So here, the fact that the board is authorized and required to collect tolls and charges under the act does not make the board an instrument or agency of the state for profit, or convert it into a mere business enterprise. The act creating the board and defining its powers and duties was inspired and authorized by the constitution itself in the interest and for the benefit of the people through the promotion of commerce, which is always one of the chief cares and imperative duties of all governments. But even if it were true that in so far as the duties of the board were those a wharfinger, and that the liabilities of the state to its employees are or should be the same as that of a private corporation engaged in the same business, it does not follow that the state is or would be liable to the plaintiff, inasmuch as he was employed in a distinct branch of the service, viz., the protection against or extinguishment of fires, which, even in the case of municipal corporations, is uniformly held to be the exercise of a purely governmental function; and there is certainly as strong ground for distinguishing between the different functions of the board as there can be for distinguishing between the different functions of municipal corporations, in the exercise of some of which the corporation is liable for negligence, whilst in others it is not.

Respondent refers to *Chapman v. State, supra,* where the state was held liable for the negligence of the board of harbor commissioners in permitting a wharf to become unsafe, and which fell, whereby a large quantity of coal placed thereon was lost, and, after correctly stating that the liability of the defendant was that of a wharfinger—a bailee—and that the action was substantially an action for the breach of a contract, he argues that "the relation of master and servant is a contract relation, and this action, the same as in the Chapman case, is brought to recover damages for a breach of duty under the contract."

This action, however, is in tort, and not upon contract. A tort is defined to be "any wrong, not consisting in mere breach of contract, for which the law undertakes to give to the injured party some appropriate remedy against the wrongdoer." (Cooley on Elements of Torts, 2.) The same author (page 19) says: "One may become liable in an action as for tort, either: 1. By actually doing to the prejudice of another something he has no legal right to do; 2. By doing something he may rightfully do, but wrongfully or negligently doing it by such means, or at such time, or in such manner, that another is injured; 3. By neglecting to do something which he ought to do, whereby another suffers injury."

In the Chapman case, the defendant's contract of bailment was to deliver a certain quantity of coal, and the damages for a breach of that contract was the value of the coal agreed to be delivered, and the contract itself furnished at least one of the essential standards for the measurement of damages, viz., the quantity of the coal lost. Here the contract of employment has nothing whatever to do with the liability except to create a duty on the part of the employer, a duty not expressed in the contract, and for the violation of which the contract of employment furnishes no rule or standard for the estimation of damages; nor is the action grounded upon the contract, but upon the duty springing from the relation created by it, viz., that of employer and employee, and under the old system of pleading was always classed as an action *ex delicto.*

Having concluded that the action is not upon the contract, that it did not arise out of the employment of the plaintiff by the board while it was engaged in the exercise of a mere business

function, but in the exercise of a governmental power for the benefit of the public, and that the act of 1893 authorizing suits against the state is merely remedial, and did not create a liability where none existed before, this action is brought clearly within the case of *Bourn v. Hart* (constituting the state board of examiners), 93 Cal. 321; 27 Am. St. Rep. 203. There the petitioner asked this court for a writ of mandate compelling the board to allow his claim against the state in accordance with the provisions of an act of the legislature appropriating ten thousand dollars for his relief for injuries received by him, while acting as a guard at the state prison, through the alleged negligence of his superior officer. The writ was denied, the court saying: "In entering the service of the state the petitioner assumed all the risks attending such employment, whether arising from its ordinary perils or resulting from the negligence or misfeasance of other servants of the state, and the appropriation made by this act is a mere gratuity, as the state was under no legal liability to compensate him for any loss which he may have sustained while thus in the discharge of his duties."

In this discussion we have assumed, without deciding, that the evidence was sufficient to sustain the charge of negligence on the part of the officers and agents of the state, and our conclusion renders it unnecessary to consider numerous alleged errors of law occurring upon the trial.

The judgment and order are reversed, with directions to the court below to sustain the demurrer to the complaint.