[Civ. No. 2853. Third Appellate District.—March 30, 1925.]

WESTERN ASSURANCE COMPANY OF TORONTO (a Corporation) et al., Appellants, v. SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT, Respondent.

[1] RECLAMATION DISTRICTS — DRAINAGE DISTRICTS — GOVERNMENT AGENCIES.—Drainage and reclamation districts, in strictness, are not corporations, but rather governmental agencies to carry out a specific purpose, the agency ceasing with the accomplishment of the purpose.

[2] ID.—RIGHT VESTED IN STATE—DISTRICT AS PUBLIC MANDATORY.— Where the sole and exclusive right and power to administer the affairs of a district organized to carry out and accomplish the same general purpose as drainage and reclamation districts is, by the state, through its legislature, vested solely in itself, the district or organization so established constitutes a public mandatory or governmental agency of the state in the strictest sense.

1. See 9 Cal. Jur. 856.

[3] ID. — FLOOD CONTROL—POLICE POWER.—The act of the state in taking cognizance of and jurisdiction over the matter of flood control and all other works germane thereto involves a valid exercise of the state's police power.

[4] ID.—SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT — STATE AGENCY.—The Sacramento and San Joaquin Drainage District, which is a body corporate and politic under and by virtue of the provisions of an act of the legislature, approved March 24, 1911 (Stats. 1911, Ex. Sess., p. 117), and subsequent acts amendatory thereof, is a public mandatory or governmental agency of the state.

[5] ID.—TORTS OF OFFICERS—RIGHT TO SUE STATE.—The state cannot be sued in any case without its consent; and it is not liable for the torts of its officers, agents, or servants, and it can be made so liable only upon its clear and definitely given consent.

[6] ID.—NEGLIGENCE OF SERVANTS — RESPONDEAT SUPERIOR. — Neither the acts creating the Sacramento and San Joaquin Drainage District or the state board of reclamation, nor any other statute, authorize actions against either said district or said board for damage or injury to property resulting from the negligence of its servants, agents, or employees, while engaged in the performance of services or their duties as such.

[7] ID. — INJURIES TO PROPERTY — LIABILITY OF PUBLIC CORPORATION —CONSTITUTIONAL LAW.—Under section 14 of article XIII of the constitution, where public work is done by the agents or employees of a public corporation, such as a municipality, in accordance with specific directions of, or plans and specifications adopted by, the corporation itself through its governing body, such corporation is liable in damages for injuries to the property of a citizen necessarily and directly resulting from the performance of the work itself.

(1) 19 C. J., p. 616, n. 78.   (2) 19 C. J., p. 611, n. 38, p. 614, n. 72, p. 616, n. 78.   (3) 36 C. J., p. 998, n. 11.   (4) 20 C. J., p. 1191, n. 85, p. 1192, n. 89 New.   (5) 36 Cyc., p. 881, n. 13, p. 911, n. 45.   (6) 19 C. J., p. 633, n. 53, p. 709, n. 70.   (7) 20 C. J., p. 1162, n. 22.

APPEAL from a judgment of the Superior Court of Sacramento County.   Malcolm C. Glenn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Miller & Thornton for Appellants.

3.   See 9 Cal. Jur. 851.

Stephen W. Downey for Respondent.

HART, J.—The plaintiffs, five in number, are duly organized corporations, and, during all the times mentioned in the complaint, engaged in the fire insurance business in the state of California, by authority of and obediently to the laws thereof. Each of these insurance companies—some in the year 1919 and the others in the year 1920—issued a policy of insurance in a certain specified sum on the dwelling-house, a tankhouse and windmill, a blacksmith-shop, a garage, a large barn and two small barns, all located upon the east side of Sutter basin by-pass levee, on what was formerly known as the Ball Ranch, in Sutter County, and of which property the Sutter Basin Company was then and at the time of the commencement of this action the owner and in possession. The aggregate amount of the insurance so taken upon and covering said property was $23,587.88.

The defendant is a body corporate and politic under and by virtue of the provisions of an act of the legislature of the state of California, approved March 24, 1911 (Stats. 1911, Ex. Sess., p. 117), and subsequent acts amendatory thereof, said defendant being "generally known and designated as the 'Reclamation Board of the State of California.' "

The complaint states the ground upon which the plaintiffs base their alleged cause of action against the defendant as follows:

"That on the 1st day of September, 1919, the defendant above named acting by and through the Reclamation Board of the State of California, made and entered into a contract in writing with one William P. Dwyer, wherein and whereby the said Dwyer was engaged and employed by it to do certain work in connection with the construction and completion of the east levee of the Sutter By-Pass and the east and west levees of Wadsworth Slough Canal and the drainage east of Sutter By-Pass under and in accordance with and subject to the supervision, directions and instructions of said Reclamation Board, or its representatives, which said work or a portion thereof, was done for the said Dwyer under and subject to the supervision, directions and instruc-

tions of said Reclamation Board, or its representatives, by the Ajax Dredging Company.

"That in the doing of said work the said Ajax Dredging Company set fire to grass and weeds in front of a dredger being used by it for that purpose, which fire by and through the carelessness and negligence of the persons in charge thereof spread to a stubble field adjoining the place where said fire was started, and then to the buildings and structures of the said Sutter Basin Company which are set forth and described in Paragraph VI of this Complaint, and totally destroyed the same to the damage of the said Sutter Basin Company in the sum of Four Thousand Four Hundred and Ten ($4410.00) Dollars, which said sum was the reasonable market price and value of said property so destroyed at the time of its said destruction."

The payment by the several plaintiffs of their respective proportions of the loss sustained by reason of the destruction of the property mentioned is then alleged, and, further, that, prior to the commencement of this action, the said Sutter Basin Company, "in consideration of the payment to it by said insurance companies respectively of the amounts" paid to said company for the loss as alleged in the complaint, assigned and transferred to the plaintiffs all claims and demands that it had "against any person or persons whatsoever arising out of the fire which destroyed the property referred to in Paragraph VI" of the complaint, "and that, ever since that time, the plaintiffs have been, and now are, the sole and exclusive owners of said claims, and all thereof." These claims and the assignments thereof to plaintiffs, the complaint proceeds, were, before the commencement of this action, duly presented to the reclamation board of the state of California, "which said Reclamation Board at all the dates and times herein stated, was, and now is, acting for and on behalf of the defendant above named with reference to any and all of the matters of fact and things herein alleged," and that "said reclamation board, acting for and on behalf of the defendant, rejected and refused to allow said claims, or any part thereof," and refused to allow or pay the same or any part thereof.

The aggregate amount for which judgment is prayed is the sum of $2,472.92.

The defendant demurred to the complaint on the ground of the insufficiency of facts to state a cause of action, and on the special grounds of ambiguity, unintelligibleness, and uncertainty in numerous specified particulars.

The court sustained the demurrer, without leave to amend, and thereupon dismissed the action. This appeal is by the plaintiffs from the judgment entered upon said orders.

The pivotal question presented herein is whether an action will lie against the defendant for damage to property occurring in consequence of the negligence of its servants or employees. This question was, of course, raised by the general demurrer, and the ruling sustaining the demurrer presents the question to us.

[1] It is established by the decisions that drainage and reclamation districts, in strictness, are not corporations, "but rather governmental agencies to carry out a specific purpose, the agency ceasing with the accomplishment of the purpose." (*People ex rel. Chapman* v. *Sacramento Drainage Dist.*, 155 Cal. 373, 382 [103 Pac. 207, 212]. See, also, *People* v. *Reclamation Dist. 551*, 117 Cal. 114 [48 Pac. 1016] ; *People* v. *Levee Dist. No. 6*, 131 Cal. 30 [63 Pac. 676] ; *Reclamation Dist. No. 551* v. *County of Sacramento*, 134 Cal. 477 [66 Pac. 668] ; *Reclamation Dist. No. 70* v. *Sherman*, 11 Cal. App. 399, [105 Pac. 277] ; *Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234 [212 Pac. 706].) Some of the drainage and reclamation and irrigation districts considered by the cases just mentioned were formed and organized under special acts of the legislature and some under the general laws of the state, and, while the administration of the affairs of all of them is committed entirely to the owners of the lands embraced within the districts, still they are, nevertheless, public mandatories or governmental agencies through which the state administers and executes one of its most important functions. The reason that that is so as to reclamation districts is because the swamp and overflowed lands of California were granted by the general government to the state upon condition that the latter would see to the reclamation of the same so that they might become suitable for the purposes of cultivation, and, as an essential corollary of that proposition, those who purchase such lands from the state so take them subject to the right, and, indeed, the duty of the state, either by a scheme immediately directed and supervised by itself through officers

or agents appointed for that purpose, or by committing that duty to the owners themselves of such lands, to coerce such reclamation according to such rules, regulations, and plans as may be prescribed by the state through its legislature. [2] If, however, drainage and reclamation districts organized and their affairs administered by virtue of special acts or under the general laws of the state are public mandatories or governmental agencies of the state, there is much stronger reason for holding that, where the sole and exclusive right and power to administer the affairs of a district organized to carry out and accomplish the same general purpose is by the state, through its legislature, vested solely in itself, the district or organization so established constitutes a public mandatory or governmental agency of the state in the strictest sense—as much so, indeed, as any other governmental agency or department created by the legislature, such as the state highway commission, the state board of education, the state board of health, the state mining bureau, and the numerous other like instrumentalities through and by means of which the state exercises and applies portions of its sovereign authority. [3] Indeed, it has frequently well been held that the act of the state in taking cognizance of and jurisdiction over the matter of flood control and all other works germane thereto involves a valid exercise of the state's police power. (See *Gray* v. *Reclamation Dist. 1500*, 174 Cal. 622, and cases therein cited at page 638 [163 Pac. 1024].)

[4] That the defendant herein is, strictly, a state agency, is a proposition not only clearly shown by the provisions themselves of the several legislative acts creating and vesting in it the powers which it is authorized to exercise to accomplish the great purposes of its creation, but also thoroughly established and settled by the decisions of our courts. In confirmation of this statement it is hardly necessary to go further than to reproduce herein the following from the case of *Argyle Dredging Co.* v. *Chambers*, 40 Cal. App. 332, 343 [181 Pac. 84, 88] : ''Much more closely is the Sacramento and San Joaquin drainage district knitted to the state and really part of it than is the ordinary drainage district. Section 7 of the Reclamation Act of 1915 declares that 'the State of California and the people thereof are hereby declared to have a primary and supreme interest in having erected, maintained and protected in the banks of the Sacramento and San Joaquin rivers and their tributaries

and the by-passes and overflow channels and basins mentioned herein, good and sufficient levees and embankments or other works of reclamation, adequately protecting the lands overflowed or subject to overflow by said streams, . . . and it shall be the duty of the reclamation board at all times to enforce on behalf of the State of California and the people thereof the erection, maintenance and protection of such levees . . . as will, in their judgment, best serve the interests of the State of California. The purposes and objects of this act are to carry into effect the plans of the California Debris Commission with such modifications and amendments and such additional plans as have been or may hereafter be adopted by the reclamation board for the control of the flood waters of the Sacramento and San Joaquin rivers and their tributaries and said basins and to vest in said reclamation board control and jurisdiction over said plans.' ''

Interesting, too, to the present inquiry, is the clear and succinct statement, embraced in the opinion in the Argyle Dredging Company case, of the Honorable Robert T. Devlin, a recognized authority upon the subject, of the objects and legislative history of the acts creating the state board of reclamation and the defendant and providing for the work to be done and for the governing machinery thereof. Mr. Devlin therein shows that said legislative acts were the culmination of an agreement between the general government and the state of California, based upon elaborate reports as to flood control and reclamation along the Sacramento and San Joaquin Rivers by government engineers, whereby the federal government and the state of California were to undertake, under the exclusive jurisdiction and control of the state, at the joint expense of the two governments and the land owners to be benefited thereby, the accomplishment of the prodigious purposes of said legislation.

Thus it is to be seen that, in considering this appeal, or the questions presented for solution thereby, we are dealing with a public mandatory or governmental agency of the state—indeed, with the state itself, exercising through and by means of the defendant or its governing body portions of the infinite variety of functions which belong or are pertinent to its sovereign powers and the policies essentially incident thereto.

The complaint, it will be observed, does not state facts which would bring this case within the terms of section 14 of article I of the constitution, which, among other things, provides that "private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court, for the owner." There is no allegation in the complaint from which it is to be inferred or implied that the property destroyed was thus taken or damaged for a public use or to promote the ends of a public use. It is not alleged that the setting of the fire to the grass and weeds "in front of the dredger" constituted an act necessary to the doing of the work in the performance of which for the defendant the dredger company was then engaged. And even if a direct averment to that effect were in the complaint, and it was true, the basis of the charge of the plaintiffs would not rest on that fact, but upon the fact that the agents or servants of the defendant, by their carelessness and negligence, caused an act, in and of itself necessary and proper, to extend its effect beyond the designed and legitimate purpose and scope thereof to the damage of the property described in the complaint. This, it is clear, makes a case only in which it is sought to bind the defendant, upon the doctrine of *respondeat superior,* to liability for the consequences of a tort negligently committed by its officers, agents, employees, or servants while performing their duties as such.

[5] It is elementary that the state cannot be sued in any case without its consent; and all the authorities are united upon the proposition that it is a general principle of law that a state is not liable for the torts of its officers, agents, or servants, and that it can be made so liable only upon its clear and definitely given consent. (See notes to Vol. 13 A. L. R., p. 1276.)

In *Gibbons* v. *United States,* 8 Wall. 275, 19 L. Ed. 453 [see, also, Rose's U. S. Notes], Mr. Justice Miller said: "The general principle which we have already stated as applicable to all governments forbids, on a policy imposed by necessity, that they should hold themselves liable for the unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties."

In his work on Agency (section 319), Judge Story declares that "the government does not undertake to guarantee to any person the fidelity of any of its officers or agents

whom it employs, since that would involve it in all its operations in endless embarrassments and difficulties and losses, which would be subversive of the public interests." (See, also, *Hensley* v. *Reclamation Dist. No. 556,* 121 Cal. 96, 97 [53 Pac. 401]; *Sels* v. *Green,* 81 Fed. 555, affirmed in 88 Fed. 127.)

[6] Neither the acts creating the defendant or the state board of reclamation, nor any other statute with which we are familiar, authorize actions against the defendant or the state board of reclamation for damage or injury to property resulting from the negligence of its servants, agents, or employees, while engaged in the performance of services or their duties as such. It is true that the act whereby the defendant was brought into existence (sec. 4, Stats. 1913, p. 266), provides that said board "shall have power to sue and to be sued"; but such a provision in a statute creating a governmental agency is remedial only—that is, its effect is not to create a liability against such governmental agency, but merely to afford a remedy where none was formerly available for the enforcement of "such liability as would have existed if the statute had not been enacted." (*Denning* v. *State of California,* 123 Cal. 316 [55 Pac. 1000, 1001]. See, also, *Chapman* v. *State, etc.,* 104 Cal. 690 [43 Am. St. Rep, 158, 38 Pac. 457]; *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416].)

It has been uniformly held in this state, as we have seen, that irrigation districts, formed and organized under the general laws of the state or by special legislative acts, are governmental agencies of the state, and it has also likewise been held that the law as to such organizations is the same as that applicable to public or govermental agencies whose objects or purposes are similar to those of the defendant. (See *In re Madera Irr. Dist.,* 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272]; *Jenison* v. *Redfield,* 149 Cal. 500 [87 Pac. 62]; *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056]; *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [17 A. L. R. 72, 198 Pac. 1060]; *Tormey* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal. App. 559 [200 Pac. 814]; *Whiteman* v. *Anderson-Cottonwood Irr. Dist. et al.,* 60 Cal. App. 234, 237 et seq. [212 Pac. 806].)

In the case last named (*Whiteman* v. *Anderson-Cottonwood Irr. Dist.*) the very question involved herein was presented to this court. In the opinion the late Justice Bur-

nett, the author thereof, after reviewing many authorities and an exhaustive consideration of the several points involved therein, summarized the conclusions of this court in said case as follows: "1. Whatever may be the recognized rule in other jurisdictions under similar legislation, an irrigation district under the Wright Act or California Irrigation District Act must be deemed a public agency created for a public purpose; 2. Such agency is not subject to an action for damages resulting from the negligence of its officers or agents in the absence of a statute expressly imposing such a liability; 3. That no such liability is expressly imposed in or by the law providing for the organization and government of such districts or by any other statute of this state."

The foregoing summary of the conclusions arrived at in that case is precisely applicable to this. Indeed, that case is decisive of the instant case.

It is not necessary to review the cases cited by the plaintiffs herein which they claim support their contention that the complaint states a cause of action against the defendant. There is no inconsistency between the rulings in those cases and the conclusions herein reached. [7] We do not, of course, here hold that where public work is done by the agents or employees of a public corporation, such, for instance, as a municipality, in accordance with specific directions of or plans and specifications adopted by the corporation itself through its governing body, such corporation would not be liable in damages for injuries to the property of a citizen necessarily and directly resulting from the performance of the work itself. That in such circumstances a public corporation would be so liable is precisely what section 14 of article I of the constitution declares and what the cases relied upon by the plaintiffs herein hold, and properly so. No such a case is presented here, however, as has above been pointed out.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 28, 1925.

All the Justices concurred.