[Civ. No. 3187. Third Appellate District.—January 22, 1927.]

MARTIN RAUSCHAN, Appellant, v. THE STATE COMPENSATION INSURANCE FUND, Respondent.

[1] WORKMEN'S COMPENSATION ACT — STATE COMPENSATION INSURANCE FUND—AGENCY OF STATE.—The State Compensation Insurance Fund, created under the Workmen's Compensation, Insurance and Safety Act of 1913 (Stats. 1913, p. 279), is an agency of the state maintained for the purpose of administering certain portions of the state's sovereign powers.

[2] STATE—LIABILITY FOR TORTS OF OFFICERS OR AGENTS—CONSENT.— The state can be made liable for the torts of its officers, agents, or servants only upon its clear and definitely given consent.

[3] WORKMEN'S COMPENSATION ACT — INDUSTRIAL ACCIDENT COMMISSION — ACTIONS — REMEDIES. — Section 38(b) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, p. 279), authorizing the Industrial Accident Commission to sue and be sued, is remedial only and its effect is not to create a liability against such governmental agency, but merely to afford a remedy where none was formerly available for the enforcement of such

---

2. Consent to suit against state, note, 42 A. L. R. 1464. See, also, 23 Cal. Jur. 578; 25 R. C. L. 412.

liability as would have existed if the statute had not been enacted.

[4] ID.—LIABILITY FOR TORTS OF OFFICERS, AGENTS, AND SERVANTS—ACTIONS.—There is no provision of law which authorizes the maintenance of a suit against the State Compensation Insurance Fund or the Industrial Accident Commission for the torts of their officers, agents, or servants committed while in the discharge of their duties as such.

[5] STATE—INJURIES TO PERSON AND PROPERTY—TORTS OF OFFICERS AND EMPLOYEES — CONTRACTS — REMEDIES. —The rule of liability for wrongs committed by the state, or any of its agencies or mandatories established for administering portions of its sovereign powers, appertains exclusively to breaches of contractual obligations, and not to the tortious acts of the agents or employees of the state committed in the course of their employment as such and from which injury to the person or property of others directly follows.

[6] WORKMEN'S COMPENSATION ACT — STATE COMPENSATION INSURANCE FUND — TORTS — SLANDER — ACTIONS. — In view of section 37(c) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, p. 279), it cannot be said that the State Compensation Insurance Fund is a business enterprise conducted by the state for profit so as to support an action against the fund for damages for alleged slanderous statements made by a servant or agent of the fund.

[7] STATE—ENGAGING IN PRIVATE BUSINESS—IMMUNITY FROM LIABILITY FOR TORTS OF OFFICERS AND AGENTS — WAIVER. — The state, when it engages in the prosecution of a private business enterprise, does not waive its immunity from liability for the torts of its officers or agents employed in the administration of the affairs of such enterprise.

---

(1) Workmen's Compensation Acts, **C. J.**, p. 145, n. 55; 36 **Cyc.**, p. 911, n. 45.   (2) 36 **Cyc.**, p. 881, n. 13.   (3) 36 **Cyc.**, p. 915, n. 78. (4) 36 **Cyc.**, p. 919, n. 7.   (5) 36 **Cyc.**, p. 882, n. 17.   (6) 36 **Cyc.**, p. 919, n. 7.   (7) 36 **Cyc.**, p. 919, n. 9.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Pat R. Parker, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Emil G. Buehrer and A. M. More for Appellant.

Frank J. Creede for Respondent.

HART, J.—This is an action in tort and was brought by the plaintiff to recover damages upon two separate and distinct causes of action—the one, for the utterance by the defendant Gilbert, "as the servant and agent of the (defendant) State Compensation Insurance Fund," of certain alleged slanderous language and words of and concerning plaintiff, and involving the statement that plaintiff was afflicted with a loathsome disease, and the second founded upon the charge that, by reason of said alleged slanderous language and words, as so uttered by said Gilbert, they having been uttered in the presence of the wife of the plaintiff, the latter lost the affection, consortium, society, etc., of his said wife, or, in other words, that the utterance of said language and words, as explained, caused the alienation from plaintiff of the affection, consortium, etc., of his wife.

The defendant State Compensation Insurance Fund, to which hereinafter we will refer as the "Compensation Fund," interposed a demurrer to the complaint upon both general and special grounds. The court sustained the demurrer so interposed, "without leave to amend." Judgment was thereupon entered dismissing the action as to the demurring defendant. The plaintiff appeals from said judgment.

The plaintiff, by this action, seeks to fasten upon the defendant Compensation Fund liability for the damage he claims to have sustained by reason of the alleged slanderous words used by the defendant Gilbert of and concerning plaintiff and for the loss by him of the affection, consortium, etc., of his wife, because of the utterance of said language and words in her presence and hearing, upon the theory that Gilbert, at the time he used the alleged slanderous language, was the agent of the other defendant and then acting within the scope of his authority as such agent.

The complaint alleges that the defendant Compensation Fund was and is a corporation, organized under the laws of the state of California, and "was and is duly and regularly in the business of acting as an insurance carrier for employees and others in said state, under the provisions of the Workmen's State Compensation, Insurance and Safety Act of the state of California, for profit"; that Dr. Ramon

A. Gilbert, "at all times hereinafter mentioned, was in the employ and under the direction of said State Compensation Insurance Fund, as a physician and surgeon." The remainder of the story may the better be told in the language of the complaint itself, as follows: "That on or about the 16th day of July, 1923, plaintiff was in the employ of the S. Bauer Cooperage Co. at San Francisco, state aforesaid, and on said day in the due and regular course of his said employment, plaintiff sustained an injury to his person, to-wit, a hernia; that at said time defendant State Compensation Insurance Fund was the insurance carrier of the said S. Bauer Cooperage Co., and under the provisions of the said Compensation Act, was liable to pay any compensation which might or could be awarded to plaintiff because of the injury by him sustained as aforesaid; that on or about the 17th day of July, 1923, plaintiff was examined by one Dr. Peters, at the Franklin Hospital, San Francisco, and was by him informed that he was suffering with 'hernia' and was advised to submit to a radical operation to cure him thereof; that on or about the 6th day of August, 1923, plaintiff was admitted to said Franklin Hospital, and thereafter on the 9th day of August, 1923, an operation was performed on the body of plaintiff by Dr. Conrad Weil, at said Hospital, to cure plaintiff from said injury sustained in said employment, as aforesaid. That on or about the 24th day of September, 1923, at the request of the attorney of said State Compensation Insurance Fund, plaintiff was sent by said defendant to defendant Gilbert for an examination to determine the extent of his disability on account of said injury; that on said day plaintiff, in company with his wife and his representative, proceeded to the office of said Gilbert, where plaintiff was examined in private by said Gilbert; that thereupon said defendant Gilbert returned with plaintiff to where his wife and his representative, Moses Amaral, were standing and in the hearing and presence of said Moses Amaral and his wife, Mrs. Rauschan, the said Gilbert, as the servant and agent of the said State Compensation Insurance Fund as aforesaid, spoke of and concerning the plaintiff the following words, to-wit: 'This man was not operated on for hernia, he never had a hernia; what he had is the ——,' (naming a loathsome disease). That immediately thereupon the said Gilbert was cautioned by plaintiff's said represen-

tative that such statements were untrue and would cause plaintiff great and irreparable injury, in that they would be the source and cause of discord between plaintiff and his wife and would probably result in causing a divorce to be had by plaintiff's wife, but that said Gilbert entirely ignored said warning and smilingly retorted 'I don't care' and walked away.''

It is then alleged that the ''words so spoken and published were and are deliberately false and defamatory,'' were so known to be by said Gilbert, and were made maliciously and ''with the object to frighten plaintiff and cause him to abandon his claim for compensation for said injury, which said claim had been filed with and was then pending before the Industrial Accident Commission of the state of California, and were intended to save the said defendant State Compensation Insurance Fund from paying compensation to plaintiff to which he was lawfully entitled.''

The complaint proceeds to allege that the plaintiff has been greatly damaged in his good name and reputation as a result ''of the speaking and publication of the said words'' by defendant Gilbert, as alleged; that, ever since the utterance of said words by said Gilbert, the marital relations of plaintiff have been disrupted; that his wife, ever since the utterance of said words as indicated, has vilified plaintiff, has wrongfully accused him of promiscuous sexual relations with other women than herself and has and does wrongfully characterize him in language befitting one who habitually engages and has engaged in indiscriminate immoral relations with disreputable females; ''that since the said speaking of the said words, plaintiff's wife has refused and still refuses to have any marital relations with plaintiff, and because of the premises plaintiff has been deprived of his domestic happiness.'' For the damage so set up and claimed, plaintiff asks for an award of $25,000.

The second cause of action, as we have seen, is for the alleged loss by plaintiff of ''comfort, consortium and affection'' of his wife, the direct result, as the complaint alleges, of the utterance by defendant Gilbert, under the circumstances described in the statement of the first cause of action, of the words therein set forth and which constitute the grounds of complaint herein. For the damage so claimed plaintiff also asks for the sum of $25,000.

The demurrer to the complaint as to both counts was properly sustained.

[1]   An act known as the Workmen's Compensation Act was passed by the legislature of 1911 (Stats. 1911, p. 796). In October, 1911, the people adopted and added to article XX of the constitution, section 21, expressly authorizing the legislature to create and enforce a liability on the part of all employers to compensate their employees for any injuries incurred by said employees in the course of their employment, irrespective of the fault of either party. (Stats. 1911, p. 2179.)  In pursuance of said amendment to the constitution the legislature in 1913 passed a law entitled in part: "An act to promote the general welfare of the people of this state as affected by accident causing the injury or death of employees in the course of their employment, by creating a liability on the part of employers to compensate such employees and their dependents for such accidental injury or death, irrespective of the fault of either party, and providing the means and methods of enforcing such liability; and creating a 'State Compensation Insurance Fund' to insure employers against such liability and providing for its administration and regulating such insurance by other insurance carriers," etc. (Stats. 1913, p. 279).  Section 1 of this law provided that the same "may be cited as the 'Workmen's Compensation, Insurance and Safety Act.' "  In 1918 section 21 of article XX of the constitution was amended by a vote of the people.  Among the changes therein made was a provision expressly authorizing "the establishment and management of a State Compensation Insurance Fund," a provision which was not contained in the amendment of 1911 of article XX of the constitution.  However, the legislation involved in said acts represented the exercise of the state's power of police, notwithstanding the express grant in the constitution authorizing such legislation.  (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 694 [Ann. Cas. 1916E, 703, 151 Pac. 398, 401].)  In other words, as was said in the case just mentioned, in which the Workmen's Compensation, Insurance and Safety Act was under attack: "If such a law may be given force, the sanction for it must be found in that legislative authority usually termed the police power." These propositions, however, are not contested here. And, as we understand counsel for the appellant, he does not deny

that the system or scheme involved in the Compensation, Insurance and Safety Act constitutes and was intended to constitute a governmental mandatory or agency to which the legislature committed the administration of certain of the state's sovereign powers; that, in other words, the State Compensation Insurance Fund is an agency of the state and was established for the purpose of administering certain portions of the sovereignty of the state.

[2] It is a proposition placed beyond the realm of doubt—indeed, it is elementary—that the state cannot be sued without its consent, "and all the authorities are united upon the proposition that it is a general principle of law that a state is not liable for the torts of its officers, agents or servants, and that it can be made so liable only upon its clear and definitely given consent." (*Western Assur. Co.* v. *Drainage Dist.*, 72 Cal. App. 68, 75 [237 Pac. 59], in which a hearing was denied by the supreme court; see, also, notes to vol. 13, A. L. R.) Upon this proposition we may well present excerpts from a few of the authorities. In *Gibbons* v. *United States*, 8 Wall. (U. S.) 275 [19 L. Ed. 453, see, also, Rose's U. S. Notes], Mr. Justice Miller said:

"The general principle which we have already stated as applicable to all governments forbids, on a policy imposed by necessity, that they should hold themselves liable for the unauthorized wrongs inflicted by their officers on the citizens, though occurring while engaged in the discharge of official duties."

In his work on Agency, section 319, Judge Story declares that:

"The government does not undertake to guarantee to any person the fidelity of any of its officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments and difficulties and losses, which would be subversive of the public interests." (See, also, *Hensley* v. *Reclamation Dist. No. 556*, 121 Cal. 96, 97 [53 Pac. 401]; *Sels* v. *Green*, 81 Fed. 555, affirmed in 88 Fed. 127.)

[3] But we do not understand that the appellant disputes the foregoing proposition. He does claim, however, that under the Employers' Liability Act a party may sue the State Compensation Insurance Fund to recover damages for a tort committed by any of the officers or agents or servants

thereof in the course of their employment as such for two reasons, to wit: 1. Because the act provides, section 38b, that the Industrial Accident Commission may "sue and be sued in all the courts of the state in all actions arising out of any act, deed, matter or thing made, omitted, entered into, done, or suffered in connection with the State Compensation Insurance Fund, the administration, management or conduct of the business or affairs relating thereto"; 2. That the State Compensation Insurance Fund was established and is maintained by the state for the purpose of profit and that the state thus is exercising its proprietary and not its governmental powers and that, therefore, the state, as is true of municipal corporations when exercising their proprietary capacity, may be sued for the torts of its officers or agents or servants committed in the performance of their duties in the administration of the proprietary powers of the government.    Answering the proposition first suggested, it is to be remarked that the provision of the statute authorizing the State Industrial Accident Commission to sue or to be sued is remedial only—"that is, its effect is not to create a liability against such governmental agency, but merely to afford a remedy where none was formerly available for the enforcement of 'such liability as would have existed if the statute had not been enacted.'" (*Denning* v. *State,* 123 Cal. 316 [55 Pac. 1000]; *Chapman* v. *State, etc.,* 104 Cal. 690 [43 Am. St. Rep. 158, 38 Pac. 457]; *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416]; see, also, *Western Assur. Co.* v. *Drainage Dist., supra.*)    [4] Counsel has not pointed out, nor have we been able to find, any provision of any law in this state which authorizes the maintenance of a suit against the State Compensation Insurance Fund or the State Industrial Accident Commission for the torts of its officers or agents or servants committed while in the discharge of their duties as such.

[5]    The case of *Chapman* v. *State of California,* 104 Cal. 690 [43 Am. St. Rep. 158, 38 Pac. 457], is cited by appellant as authority for his position that the state, in instances in which it engages in the prosecution of what in an ordinary sense would properly be regarded as a business enterprise, may be sued and held liable for the torts of its officers or agents employed in performing the duties of its proprietary powers.    In that case the action was for damages for the loss

of a quantity of coal through the negligent act of certain officers or employees of the state. The complaint therein alleged that, on a date named, the defendant, "in consideration of wharfarge and dockage charges, paid to its officers, the state board of harbor commissioners, received upon one of its public wharves, situated in the city of San Francisco, and under the jurisdiction and control of the state board of harbor commissioners, about one hundred and thirty tons of coal belonging to the assignors. of plaintiff, and to be removed by them from such wharf"; that a large portion of the wharf on which the coal was placed broke and gave way "by reason of the negligence, omission, and carelessness of defendant, its officers, and agents, . . . in failing and neglecting to keep said wharf in good and sound condition and repair," all said coal was sunk in the bay of San Francisco and became a total loss, etc. The contention of the Attorney-General in that case was that the state was not responsible for the negligence of its officers, undoubtedly assuming that the action was one sounding in tort. The supreme court, in its opinion, held to the contrary, declaring, among other things:

"A wharfinger is impliedly bound by his contract as such to exercise ordinary care for the preservation and safety of property intrusted to him (Edwards on Bailments, 3d ed., sec. 359), and this imposes upon him the duty to exercise ordinary care to ascertain the condition of his wharf, that he may know whether it is reasonably safe for the purposes for which he hires it; and, if merchandise is received by him upon a wharf which is unsafe, and is thereby lost, so that he cannot deliver it according to his contract, the wharfinger is liable therefor if ordinary care would have enabled him to know the condition of his wharf; and such negligence on his part will be treated as a failure to exercise ordinary care for the safety of the property intrusted to him. *This negligence, however, and the consequent loss of the goods intrusted to him, would be a breach of the terms of his contract, and his liability therefor could have been enforced at common law by an action of assumpsit* (1 Chitty on Pleading, 114; *Baker* v. *Liscoe,* 7 Term Rep. 171); and under our practice the owner or consignee may sue upon the contract for the damages sustained by reason of such negligence." (Italics ours.)

But appellant seems to place much reliance upon the following language from the case of *People* v. *Stephens*, 71 N. Y. 527, and which was approvingly quoted in the opinion in the Chapman case:

"But when the sovereign engages in business and the conduct of business enterprises and contracts with individuals, whenever the contract in any form comes before the courts the rights and obligations of the contracting parties must be adjusted upon the same principle as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor. (See, also, *Carr* v. *State*, 127 Ind. 204 [22 Am. St. Rep. 624, 11 L. R. A. 370, 26 N. E. 778].)"

The foregoing language should be read in the light of the declarations of the court in the same case first hereinabove quoted. As so read and considered, it is clear that the court, in using the language which appellant construes as a support for his position, was referring entirely to cases in which the state had breached its contracts, negligently or otherwise. In other words, the court, in the language referred to, was speaking of actions against the state sounding in contract and not of actions to recover damages for the torts of the state's officers, agents or servants committed while discharging their duties as such. While not saying so in so many words, it is clear that the court, in the Chapman opinion, had in mind and purposely recognized the proposition that, as to the state or any of its agencies or mandatories established for the purpose of administering portions of its sovereign powers, the rule of liability for wrongs committed by the state or such agencies appertains exclusively to breaches of contractual obligations, and not to the tortious acts of the agents or employees of the state committed in the course of their employment as such from which injury to the person or property of others directly follows. Indeed, if the Chapman decision could reasonably be construed as sanctioning the right of action in tort against the state or any of its mandatories for the torts of its officers, etc., the case would represent an exception to the general run of cases upon that subject in practically all the state as well as federal jurisdictions. Many of these cases are cited in respondent's brief. They are too numerous to mention herein.

[6] The contention that the case here is taken out of the category of cases in which the state or its agencies charged with the administration of certain portions of its sovereignty by reason of the asserted fact that the State Compensation Insurance Fund is a business enterprise conducted by the state for profit, is answered adversely thereto by the Compensation Act itself. Section 37 (c) provides:

"Said fund shall, after a reasonable time during which it may establish a business, be fairly competitive with other insurance carriers, and it is the intent of the legislature that said fund shall ultimately become neither more nor less than self-supporting. In order that the state compensation insurance fund shall ultimately become neither more nor less than self-supporting, the actual loss experience and expense of the fund shall be ascertained on or about the first of January in each year for the year preceding, and should it then be shown that there exists an excess of assets over liabilities, such liabilities to include the necessary reserves, and a reasonable surplus for the catastrophe hazard, then, in the discretion of the commission, a cash dividend shall be declared to, or a credit allowed on the renewal premium of each employer who has been insured with the fund, such cash dividend or credit to be such an amount to which, as in the discretion of the commission, such employer may be entitled as the employer's proportion of divisible surplus."

Thus it is clearly made to appear that the legislature did not intend that the Compensation Fund should be managed for profit, but, to the contrary, plainly evinced the intention that it should not be conducted as a profit-bearing enterprise to the state. A similar proposition was advanced in the case of *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416]. The plaintiff sought damages against the state for personal injuries received by the falling of a portion of the "grand stand" on which he was sitting as a spectator at the state fair held at Sacramento, claiming and alleging that said "stand" was, by the state's officers in charge of the fair, negligently maintained in a condition unsafe for the use or purpose for which it was erected and intended to be maintained. He paid the required admission fee to the grounds and buildings of the fair, and it was contended, among other things, as here, that the state fair was a business enterprise

conducted by the state for gain or profit. The court held
that, although all persons desiring to visit the fair were
required to pay an admission fee and the same was collected
by the state through its officers or agents in charge of the
fair, it was not the design or intention of the act creating
the institution (a governmental agency) that it should be
profit-producing to the state, and that the language of the
statute itself showed clearly that it was not to be so con-
ducted. In this connection, it may well be stated that there
is much in the opinion in the Melvin case that cogently bears
upon some of the other points presented here and which
supports the position of respondent thereon.

[7] The proposition that the state, when it engages in
the prosecution of a private business enterprise, waives its
immunity from liability for the torts of its officers or agents
employed in the administration of the affairs of such enter-
prise, is not supported either by principle or authority. As
we have seen, appellant seeks to support the proposition
upon the theory upon which municipalities are held subject
to the rule of liability in cases in which the damage com-
plained of has been caused by the negligent act or conduct
of an officer, agent or servant engaged in the discharge of
duties appertaining to or connected with the administration
of some function of the municipality in the employment or
exercise of its proprietary capacity or powers. In the case
of *Riddoch* v. *State*, 68 Wash. 329 [Ann. Cas. 1913E, 1033,
42 L. R. A. (N. S.) 251, 123 Pac. 450, 452], the court had
before it precisely the same proposition. In a well-con-
sidered opinion, the supreme court of Washington held that
the proposition was entirely untenable. What is said in the
opinion on the subject involves such a clear exposition of the
rule and of the reasons that mark a clear line of distinction
between the state and municipalities in such a case, that we
feel that we are justified in reproducing it in full:

"The appellant seeks to confine this rule of nonliability
for torts to cases where the negligence of the officer or agent
occurred in the discharge of some purely governmental func-
tion of the state. He contends that, in leasing the armory,
the state was engaged in a private enterprise, and that the
rule of nonliability, therefore, does not apply. The question
is admittedly a new one. No authority distinctly so holding,
nor indeed recognizing such an exception, has been cited,

and we have found none. It is argued that the distinction is sustained by analogy to a similar exception to the rule of nonliability as applied to municipal corporations. The analogy, however, does not hold. Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them solely for their own benefit in their corporate capacity, whether performed for gain or not, and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. They have no sovereignty of their own, they are in no sense sovereign *per se.* Their immunity, like their sovereignty, is in a sense borrowed, and the one is commensurate with the other. Such is, in effect, the conclusion reached in *Hill* v. *Boston,* 122 Mass. 344 [23 Am. Rep. 332], after a most exhaustive review of the authorities, both American and English. The same principle underlies our own decisions. *Sutton* v. *Snohomish,* 11 Wash. 24 [48 Am. St. Rep. 847, 39 Pac. 273]; *Russell* v. *Tacoma,* 8 Wash. 156 [40 Am. St. Rep. 895, 35 Pac. 605]; *Cunningham* v. *Seattle,* 42 Wash. 134 [7 Ann. Cas. 805, 4 L. R. A. (N. S.) 629, 84 Pac. 641]; *Linne* v. *Bredes,* 43 Wash. 540 [117 Am. St. Rep. 1068, 11 Ann. Cas. 238, 6 L. R. A. (N. S.) 707, 86 Pac. 858].

"On the other hand, the state is inherently sovereign at all times and in every capacity. It is the organized embodiment of the sovereign power of the whole people. By reason of this sovereignty, it possesses all powers, but only such powers as are within the limitations of the state constitution and without the prohibitions of the Federal Constitution. It can do no act except in the exercise of this sovereign power and within these constitutional limitations. If it may constitutionally take over any enterprise, though usually of the nature of a private business, the very taking over is an exercise of this sovereign power. It seems much more logical and much more consonant with the idea and genius of sovereignty that the enterprise thus taken over should be impressed with the sovereign character of the state than that the state should become hampered by the private

character of the enterprise.   The latter result is incompatible with the concept of sovereignty.

"This seems to us to be the only logical basis for the following decisions holding the state not liable for torts in connection with the administration of such enterprises taken over by the state: *State* v. *Hill,* 54 Ala. 67, in which the state was held not liable at the suit of an owner for the tortious killing of stock by the agents of the state in operating a railroad; *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416], in which the state was held not liable to a spectator who had paid for admission to a state fair conducted by an agency of the state for tortious injury by the falling of negligently constructed seats; *Denning* v. *State,* 123 Cal. 316 [55 Pac. 1000], in which the state was held not liable to an employee injured by the fall of a negligently fastened ladder on a tug boat owned by the state and operated by the state harbor commissioners as an agency of the state."

To the same effect are all of the cases to which our attention has been directed.   Of these, the following may be named: *Davis* v. *State,* 30 Idaho, 137 [Ann. Cas. 1918D, 911, 163 Pac. 373, 375]; *Herkimer Lumber Co.* v. *State,* 196 App. Div. 708 [185 N. Y. Supp. 119, 122]; *State* v. *Sharp,* 21 Ariz. 424 [189 Pac. 631]; *Dietrich* v. *Palisades Interstate Park Com.,* 114 Misc. Rep. 425 [187 N. Y. Supp. 454, 456]; *Stephens* v. *Commissioners of Palisades Interstate Park Com.,* 93 N. J. L. 500 [108 Atl. 645]; *State* v. *Mutual Life Ins. Co., etc.,* 175 Ind. 59 [42 L. R. A. (N. S.) 256, 261, 93 N. E. 213]; *Clodfelter* v. *State,* 86 N. C. 51 [41 Am. Rep. 440].

The necessary conclusion from the foregoing considerations is, obviously: That the State Compensation Insurance Fund is an agency of the state created and maintained for the purpose of administering certain of the state's sovereign powers; that the state cannot be bound by or held liable for the torts of its agents, servants or employees committed while engaged in the performance of their duties as such, unless it has clearly given its consent to be so bound or liable; that the state of California has not authorized the maintenance of actions against it or any of its mandatories for the torts of its agents, etc., committed while prosecuting their duties as such, and that, therefore, the plaintiff cannot maintain this action against respondent herein.   The

conclusion thus arrived at and announced is, manifestly, decisive of the case here as to both counts of the complaint. It is hence unnecessary to consider herein the attack upon the complaint on the other grounds raised by the demurrer and discussed in the briefs of the respective counsel.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 21, 1927.