LEON S. MOISSEIFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36111, 45700. Promulgated December 2, 1930.

*Julius H. Cohen, Esq.*, and *Frank B. Wettig, Esq.*, for the petitioner.

*C. A. Ray, Esq.*, for the respondent.

516

522

SMITH: The question presented by these proceedings is whether the petitioner is liable to income tax upon compensation paid to him

in 1925, 1926, and 1927 by the Delaware River Bridge Joint Commission and The Port Authority. The petitioner claims that these commissions were instrumentalities of Pennsylvania, New Jersey, and New York; that he was an employee of those instrumentalities; and, accordingly, that the compensation is exempt under article 88 of Regulations 69, issued under the Revenue Act of 1926, which provides in part:

Compensation paid to its officers and employees by a State or political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States and the commissions of receivers appointed by State courts, is not taxable. * * *

The respondent contends that the petitioner was not an employee of either the Delaware River Bridge Joint Commission or The Port Authority but was instead an independent contractor. He makes the further contention that The Port Authority is not a political subdivision of the States of New York and New Jersey and is not exercising an essential governmental function and, in support thereof, relies upon articles VI and XXII of the compact between New York and New Jersey creating The Port Authority, which articles provide, so far as material, as follows:

### ARTICLE VI.

The port authority shall constitute a body, both corporate and politic, with full power and authority to purchase, construct, lease and/or operate any terminal or transportation facility within said district; and to make charges for the use thereof; and for any of such purposes to own, hold, lease and/or operate real or personal property, to borrow money and secure the same by bonds or by mortgages upon any property held or to be held by it. No property now or hereafter vested in or held by either state, or by any county, city, borough, village, township or other municipality, shall be taken by the port authority, without the authority or consent of such state, county, city, borough, village, township or other municipality, nor shall anything herein impair or invalidate in any way any bonded indebtedness of such state, county, city, borough, village, township or other municipality, nor impair the provisions of law regulating the payment into sinking funds or revenues derived from municipal property, or dedicating the revenues derived from any municipal property to a specific purpose.

The powers granted in this article shall not be exercised by the port authority until the legislatures of both states shall have approved of a comprehensive plan for the development of the port as hereinafter provided.

### ARTICLE XXII.

Definitions. The following words as herein used shall have the following meaning: "Transportation facility" shall include railroads, steam or electric, motor truck or other street or highway vehicles, tunnels, bridges, boats, ferries, car-floats, lighters, tugs, floating elevators, barges, scows or harbor craft of any kind, air craft suitable for harbor service, and every kind of transportation

facility now in use or hereafter designed for use for the transportation or carriage of persons or property. "Terminal facility" shall include wharves, piers, slips, ferries, docks, dry docks, bulkheads, dock-walls, basins, car-floats, float-bridges, grain or other storage elevators, warehouses, cold storage, tracks, yards, sheds, switches, connections, overhead appliances, and every kind of terminal or storage facility now in use or hereafter designed for use for the handling, storage, loading or unloading of freight at steamship, railroad or freight terminals. * * *

The Delaware River Bridge Joint Commission was duly authorized by the legislatures of the Commonwealth of Pennsylvania and the State of New Jersey, and The Port Authority was duly authorized by the legislatures of the States of New York and New Jersey, and the consent of Congress was given to the creation of both of these districts. The agreements or compacts between the States clearly fall within the provisions of subdivision (3) of section 10, of Article I, of the Federal Constitution permitting compacts between States with the consent of Congress. The compact between the States of New York and New Jersey conferred much more authority upon the district than did the agreement or compact between the Commonwealth of Pennsylvania and the State of New Jersey, relating to the Delaware River Bridge Joint Commission. It authorized The Port Authority "to purchase, construct, lease and/or operate any terminal or transportation facility within" the district. The exercise of authority under the compact is necessarily subject to the control of Congress over interstate commerce and in the joint resolution giving the consent of Congress to the compact there is express provision that nothing in the compact "shall be construed as impairing or in any manner affecting any right or jurisdiction of the United States in and over the region which forms the subject of such agreement." We think there can be no doubt that both the Delaware River Bridge Joint Commisison and The Port Authority are public agencies of the States which were parties to the compacts. They manifestly were not private agencies. They were established for public purposes. The purposes of The Port Authority relate to the development of terminal transportation and other facilities of commerce in the Port of New York. The Port Authority consists of commissioners appointed in the manner defined by the legislatures of the two States. The authority to be exercised, as shown by the compact, the comprehensive plan, and the supplementary legislation, is a public authority. It is an authority granted by the legislatures and to be exercised on behalf of the public by representatives of the States. The power of the States to establish public agencies for harbor improvements, for drainage and reclamation purposes, to aid navigation, and to provide facilities for commerce is not open to question. *County of*

*Mobile* v. *Kimball*, 102 U. S. 691; *Minnesota Rate Cases*, 230 U. S. 352, 403, 404; *Houck* v. *Little River Drainage District*, 239 U. S. 254, 261, 262; *Milheim* v. *Moffat Tunnel Improvement District*, 262 U. S. 710, 717.

The Port Authority is none the less a public instrumentality because it is the instrumentality of two States instead of one. Each State has the constitutional power to establish an instrumentality of this character and each State has the constitutional competency, with the consent of Congress, to enter into a compact with another State to establish a similar joint instrumentality. Both the Delaware River Bridge Joint Commission and The Port Authority must be regarded as validly constituted as the competent public agencies of the Commonwealth of Pennsylvania and the State of New Jersey, in the first instance, and by the States of New York and New Jersey, in the second instance.

We now come to consider the question whether the Delaware River Bridge Joint Commission and The Port Authority were engaged in essential governmental functions. The Delaware River Bridge Joint Commission was established for the sole purpose of construct-ing and operating a bridge over the Delaware River between Phila-delphia and Camden; The Port Authority was organized with broader powers, but, up to the present time, it has not constructed any transportation or terminal facility other than bridges. The construction of bridges has always been regarded as an essentially governmental function. Bridges have to do with transportation. In *Frey* v. *Woodworth*, 2 Fed. (2d) 725; appeal dismissed in 270 U. S. 669, it was held that the income of an employee of a street railway owned and operated by the city of Detroit, Mich., was not subject to the Federal income tax, since a street railway was a high-way and the maintenance and operation of highways have from time immemorial been held to be the exercise of a strictly govern-mental function. In that case the court said:

* * * A careful consideration, however, of a number of important cases dealing with this and analogous situations, and of illuminative expositions by authoritative text-writers, who have considered the historical development of public highways, leads to the conclusion that highways and means of inter-communication in which the whole community is interested have been from the earliest times the peculiar concern of governments. * * *

In *County Commissioners* v. *Chandler*, 96 U. S. 205, it was held that the construction and maintenance of a toll bridge was the exercise of a governmental power and the exaction of a toll was not inconsistent with the public character of the work. The court stated:

Railroads, turnpikes, bridges, ferries, are all things of public concern, and the right to erect them is a public right. If it be conceded to a private indi-vidual or corporation, it is conceded as a public franchise; and the right·

to take toll is granted as a compensation for erecting the work and relieving the public treasury from the burden thereof. Those who have such franchises are agents of the public. They have, it is true, a private interest in the tolls; but the works are public, and subject to public regulation, and the entire public has the right to use them. * * *

In *United States* v. *King County, Wash.*, 281 Fed. 686, it was held that a county operating a ferry was not required to collect and pay over to the Government a transportation tax since the maintenance and operation of the ferry was the exercise of a strictly governmental function, protected against taxation by the Federal Constitution. In answer to the argument of counsel that the maintenance and operation of the ferry was an ordinary business enterprise as distinguished from a strictly governmental function, the court said:

We do not understand that the establishment and operation of a ferry by any governmental body can be properly regarded as a business enterprise, nor that there is or can be anything private about it. We understand it to be the duty of the government, whether national, state, county, or city, to provide suitable roads, bridges, and ferries for the convenience of the public, and that when such a government undertakes to do so, and to itself operate them, it is in the exercise of a strictly governmental function, * * *

In the creation of The Port Authority, the legislatures of New York and New Jersey have expressly provided that The Port Authority shall be regarded as performing a governmental function in the construction, maintenance, and operation of the Arthur Kill Bridges, the Hudson River Bridge, and the Kill van Kull Bridge. The statutes relating to the financing of the Arthur Kill Bridges (ch. 210, Laws of N. Y., 1925, and ch. 37, Laws of N. J., 1925), the Hudson River Bridge (ch. 761, Laws of N. Y., 1926, and ch. 6, Laws of N. J., 1926), and the Kill van Kull Bridge (ch. 300, Laws of N. Y., 1927, and ch. 3, Laws of N. J., 1927), provide as follows:

The construction, maintenance and operation of said bridge is in all respects for the benefit of the people of the two states, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and the Port Authority shall be regarded as performing a governmental function in undertaking the said construction, maintenance and operation and in carrying out the provision of law relating to said bridge and shall be required to pay no taxes or assessments upon any of the property acquired by it for the construction, operation and maintenance of such bridge.

This constitutes a clear declaration by the sovereign States of New York and New Jersey that the construction, maintenance, and operation of these bridges is a governmental function. Such a determination by sovereign States can not be lightly disregarded. This point is illustrated in *Oliver American Trading Co.* v. *Government of Mexico*, 5 Fed. (2d) 659; certiorari denied, 267 U. S. 596. In that case it was contended that the Mexican Government was not immune from suit as a sovereign state in so far as the operation of the

National Highways of Mexico were concerned, since the operation of a railroad system was a nongovernmental enterprise. The court, however, held that it was bound by the Mexican conception of what constituted a governmental function in so far as railroads operating exclusively in Mexico were concerned, saying at page 665:

> It is said that the Mexican government, in operating the National Railways of Mexico, is engaged in trade and in a nongovernmental enterprise. This view of the matter we do not accept. It is a fact, of which we take judicial notice, that in the leading countries of Europe, as well as in Canada, it is the practice of the governments to own and operate the railways. This is not regarded by them as engaging in trade, but as the performance of a fundamental governmental function. It is evidently so regarded in Mexico, and while in the United States the railways are not owned and operated by either the state or federal governments, we are not justified, on that account, in holding that the Mexican government is engaged in trade, and not performing a governmental function, in operating the National Railways of Mexico.

For the reasons above stated, the conclusion that the Delaware River Bridge Joint Commission, in constructing the Delaware River Bridge across the Delaware River, and The Port Authority, in constructing the Arthur Kill Bridges, the Hudson River Bridge, and the Kill van Kull Bridge, were the governmental instrumentalities of the States which they represented, and were exercising essential governmental functions, is inevitable.

The only other question presented by these proceedings is whether the petitioner was during the years 1924, 1925, and 1926 an employee of the Delaware River Bridge Joint Commission and The Port Authority within the meaning of that term as used in article 88 of Regulations 69, which defines an employee as one " * * * whose duties consist in the rendition of prescribed services and not the accomplishment of specific objects, and whose services are continuous, not occasional or temporary. * * * "

The definition of " employee " used in the regulations is substantially the same as that which is found in numerous court cases. Thus in *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518, the court said:

> * * * And the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, " not only what shall be done, but how it shall be done."

In *Railroad Co.* v. *Hanning*, 82 U. S. 649, the court, in holding that person who had undertaken to construct a wharf for a railroad company was an employee and not an independent contractor, said:

> * * * Here the general management and control of the work was reserved to the company. Its extent in many particulars was not prescribed. How and in what manner the wharf was to be built was not pointed out. That, rebuilt, was to be as good as new. The new was to be of the best workmanship. This is quite indefinite and authorizes not only, but requires a great amount of

care and direction on the part of the company. The submission of the whole work to the direction of the company's engineer is evidence, · although not conclusive, that the company retain the management and control. The reservation of authority is both comprehensive and minute. The company have the general control, and it may prescribe where each pile shall go, where each plank shall be laid, where each stringer shall be put down, where each nail · shall be driven. All the details are to be completed under their orders and according to their direction. The contractor undertakes in general terms to do the work well. The company reserve the power not only to direct what shall be done, but how it shall be done. This is an important test of liability.

In *Lucas* v. *Howard*, 280 U. S. 14A; 50 Sup. Ct. 87, the Supreme Court in a memorandum opinion reversed the judgment of the Circuit Court of Appeals reported in 29 Fed. (2d) 895, on the authority of *Metcalf* v. *Mitchell*, 269 U. S. 514. The Circuit Court of Appeals had previously reversed the judgment of this Board, 10 B. T. A. 62. The Board had held that the income received by an attorney who had been retained by several cities in Texas under separate and distinct contracts for the purpose of defending suits brought by certain public service corporations to enjoin such cities from fixing rates for services rendered was taxable. The petitioner in that case expressly admitted that he was not an employee, as appears from the following language in 10 B. T. A. 62:

\* \* \* The petitioner makes no claim that he is an officer or employee of the State or of political subdivisions thereof, \* \* \*

In *Frank H. Mesce* v. *United States*, 64 Ct. Cls. 481; certiorari denied 278 .U. S. 612, the court held that the plaintiff who was engaged by the city of Chicago as a building expert in connection with the valuation of buildings affected by certain local street improvements, was an independent contractor and not an employee. The court pointed out on page 493 that the plaintiff's compensation was a specified percentage of the value of the property appraised plus $50 for each day he served in court as a witness; that he selected his own office and paid the rent therefor; that he hired and paid his own assistants and finally that:

\* \* \* He used his own methods and instrumentalities and did the work of appraising values in his own way and as his judgment dictated, and in so doing he was free, and for such work he received his pay. As to how, with what assistance, and in what time he should perform it, he was judge and master. \* \* \*

The *Mesce* case is distinguishable upon its facts from the case of the present petitioner. Here the petitioner received a fixed compensation, was on the pay rolls of the Joint Commission, and/or of The Port Authority, was furnished an office and assistants by his employers, and was subject to the control and direction by his superiors in the performance of his duties.

In *Metcalf* v. *Mitchell, supra,* the court held that the plaintiffs, who were engaged as consulting engineers under contracts with several States, municipalities, water and sewage districts, were not employees, but rather independent contractors. The court, however, bases its decision upon the ground that the record did not indicate that the plaintiffs were subject to the direction and control of the public bodies engaging them. This is indicated from the following language of the court:

Nor do the facts stated in the bill of exceptions establish that the plaintiffs were " employees " within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. * * *

The decisions of the Board and of the courts have been consistent that the question whether the compensation paid by a State for services performed is exempt from tax is to be determined by the question whether he is an employee or an independent contractor. This, we think, was clearly the basis of the decision of the court in *Metcalf* v. *Mitchell, supra.*

In *Blair* v. *Byers,* 35 Fed. (2d) 326, the court held that an attorney employed by the Des Moines Board of Water Works Trustees was an independent contractor and not an employee. There, again, the court, on page 328, emphasizes the fact that " nowhere in the record is it revealed to what extent, if at all, his services were subject to the control of the Board of Trustees."

In *Kreipke* v. *Commissioner,* 32 Fed. (2d) 594, the court held that the profits derived by the appellant under certain construction contracts with the State of Oklahoma were not exempt from Federal income tax, since the appellant was an independent contractor and not an employee. The court pointed out that the appellant was under no obligation to work a specified number of hours daily; that he was not on any pay roll; that his employment could be terminated only in the event of a breach of contract; that he employed and paid his own men and selected and paid for the materials used by him. The court said:

Whether appellant is an independent contractor or a mere employee of the state of Oklahoma is to be determined by a construction of the contracts. The contract with relation to Pauls Valley Training School was introduced in evidence as a type of the contract entered into. It is to be observed that under this contract there was no regular employment of appellant, no engagement for any specific period of time. He was not compelled to devote all his

time to the work. There were no working hours. He was not on any payroll. He did not receive a salary or wages; he could accept concurrent employment; his employment could not be terminated except upon failure to properly perform the contract, and then only upon certificate of such failure by the supervising architect; could demand arbitration in certain cases; could demand damages for delays; was liable for damages caused by delay; employed and paid his own men; selected and paid for the materials used. * * *

In *Mathews* v. *Commissioner*, 29 Fed. (2d) 892, it appeared that the taxpayer had been appointed county attorney for a term of two years, at a salary of $200 per month. He was required to attend to all legal matters for the county and although he maintained a separate law office, he did not permit his private practice to interfere with his official duties. The court held that the taxpayer was an employee and not an independent contractor. It said:

The contract bound the taxpayer for a period of two years to attend to all legal matters for the county. He was not engaged to accomplish any particular result in a way chosen by himself, but was obligated to render any legal service for the county to which at any time during the period mentioned he was assigned by the board of county commissioners. One whose services are so at the command of another for a definite time is an employee of the latter, though the services contracted are legal services of a lawyer, who is not forbidden to render professional services to others. * * *

Cf. *Charles J. Tobin*, 17 B. T. A. 1261; *S. J. Jones*, 17 B. T. A. 1131.

In *Richard F. Burges*, 17 B. T. A. 275, the facts are that the petitioner was employed as attorney for two water improvement districts. He was held to be an employee and not an independent contractor of those districts. Although he was free to use his time for his own purposes when not employed in the business of the districts, he undertook to perform all legal services which the officials of the districts might require. The Board, in holding that the petitioner was an employee, said:

Petitioner was employed by the board of directors of the respective districts here in question, pursuant to the power vested in them by statute. His term of employment as provided in the statute could not be longer than one year at a time. He received a salary of $200 per month from each district. The duties performed by him included any and all legal services which the board of directors or the manager of the district might require in connection with the operation and management of the district. They ranged from consulting with and advising the board of the drawing of contracts and other legal instruments, the collection of delinquent taxes, the bringing of suits and the conduct of litigation in court. When not employed on the districts' business he was free to use his time for his own purposes. He was at the beck and call of the board of directors or the manager for any legal work they might require. In this situation we think petitioner was an employee of the districts, and the salary received for his services is exempt. * * *

Cf. *F. M. Livezey*, 15 B. T. A. 806; *D. F. Strickland et al.*, 16 B. T. A. 419; *James B. McDonough*, 16 B. T. A. 556; *Richard E. McIntosh*, 16 B. T. A. 1400; *Howard S. Young et al.*, 16 B. T. A. 1428. In the first named action we said:

The question of whether or not a taxpayer is a state official or employee, or an independent contractor who rendered services for the State, has been before the courts and this Board in a number of cases. The compensation of a state official or employee is exempt from income taxation while that of the independent contractor is not. The difficulty in most cases is to distinguish a state employee from an independent contractor, and each case must depend largely upon its facts. The chief distinction is that the state official or employee is in the regular continuous service of the State, with varied duties and transactions, while the independent contractor is engaged to render a particular service in one or a number of specific transactions and is free to determine what is to be done and the manner of performance. \* \* \*

We further stated:

\* \* \* The mere fact that he was also engaged in private practice does not change the character of his employment with the State.

In *Edmund D. Adcock*, 14 B. T. A. 844, the facts are that the taxpayer, who had been general attorney for the Sanitary District of Chicago, resigned his position, and was subsequently appointed a special attorney for the purpose of representing the Sanitary District in certain cases then pending against it on account of the amount of water withdrawn by it from Lake Michigan. The compensation of the taxpayer was fixed at $100 for each day engaged. We held that the taxpayer was an independent contractor and not an employee, saying:

\* \* \* The ordinance under which Adcock was appointed contained no provision subjecting him to the control of any one. It set forth that the petitioner be employed to take care of the matters set out therein. No other ordinance was presented or called to our attention which provided that the general attorney should direct the petitioner in the performance of his work.

Cf. *Fred H. Tibbetts*, 6 B. T. A. 827; *George W. Fuller*, 9 B. T. A. 708; *E. H. Coleman et al.*, 11 B. T. A. 245; *Clarence H. Johnston*, 14 B. T. A. 605.

The foregoing cases illustrate the distinction which the courts and the Board have made between an employee and an independent contractor. The cases are unanimous in holding that one who undertakes generally to perform whatever tasks may be assigned him is an employee, notwithstanding the fact that he is not precluded from accepting other employment. On the other hand, the cases unanimously hold that one who is engaged to accomplish a particular result in a manner chosen by himself is an independent contractor. Since the petitioner was required to perform such tasks as might from time to time be assigned to him by the chief engineer of the Delaware

River Bridge Joint Commission and the chief engineer of The Port Authority, and since in the performance of this task he was subject to his direction and control; was on the pay rolls of the Joint Commission and of The Port Authority the same as other employees; was required to subject himself to the regulations of the commissions with respect to the number of hours worked each day and was required to conform to the other requirements of the commissions the same as the other employees, we are of the opinion that he was an employee during the years in question of the States of New York and New Jersey and the Commonwealth of Pennsylvania, that he was not an independent contractor, and that his compensation received both from the Joint Commission and from The Port Authority is exempt from income tax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON, STERNHAGEN, and TRUSSELL dissent.