*1054 OPINION.
Goodrich:
We have previously held that the Delaware River Bridge Joint Commission is a governmental agency engaged in carrying out an essential governmental function. Leon S. Moisseiff, 21 B.T.A. 515. It is not claimed here that petitioner was an officer of the state, nor that, if an independent contractor, a tax upon his compensation would burden the state government. The fundamental question is, therefore, whether petitioner was an employee of the commission whose compensation is exempt from a Federal tax, as he contends, or whether he is an independent contractor upon whose earnings the tax may be laid, as respondent maintains. We know of no clear line of demarcation between these two classifications; the question must be determined in each case under the facts there obtaining, measured by the tests suggested by the many decisions bearing on this subject.
We are of opinion that, upon the record before us, petitioner was not an independent contractor, but an employee of the commission. While his entire time was not given to the commission’s work, he was employed, not for a single project, but, “ subject to the pleasure of the Commission ”, over a continuous period. He was on the commission’s pay roll and received a regular salary. All his expenses in connection with the work, and the compensation of his assistants, whether engineers or stenographers, were paid by the commission. And we are convinced that he was at all times under the control and direction of the commission.
*1055 That is the point upon which respondent argues vigorously to the contrary. That Modjeski is a great engineer cannot be questioned. Respondent’s counsel graciously acclaims him “ the world’s foremost bridge engineer ” whose skill and learning have been universally recognized and honored. To list the tremendous projects in which he has been and is now engaged, as they are contained in the record before us, would be to enumerate the majority of the outstanding accomplishments in bridge construction in this country for many years past, and some to be completed in the future. While admitting that petitioner was subject to the control of the commission respecting matters of administration in connection with personnel and contracts, respondent’s counsel points to petitioner’s reputation and standing and declares it impossible that a body of laymen could exercise control and direction of an expert such as petitioner respecting the myriad technical and intricate details involved in the construction of this bridge. He insists that the commission retained no right to tell petitioner how his work should be done; that the duties which he was employed to discharge were beyond their capacity to direct, and demanded the exercise of his professional skill and judgment, beyond interference by the commission.
We are content with the answer to that argument given by the resolution of the commission which prescribed the duties and terms of employment of its chief engineer. When appointing petitioner to that position the commission did not say to him simply, “ Design and build' for us a bridge.” Rather, as we read those provisions, it made him responsible for the “ design and erection of the structure in all its details,” but it set up also a board of engineers whose duty it was to follow the progress of the work, to consider all the designs and plans of the chief engineer, to report to the commission any difference of opinion respecting the details of the work, and to keep a complete record of all its proceedings for the inspection and guidance of the commission. In other words, the members of the commission, realizing that they themselves were not engineers and lacked the technical knowledge necessary to maintain a check on the plans of the chief engineer, and his direction of the work, created a board of experts to do that for them and report to them, with the result that the final decision on important problems, whether of administration or engineering, lay in their power. That was the “ control or right of control by the employer ” which, as respondent points out, was laid as a test in differentiating between employee and independent contractor in Metcalf & Eddy v. Mitchell, 269 U.S. 514. That such control was exercised by the commission with respect to matters of administration is conceded. Whether it was exercised with respect to problems of engineering, this record does *1056 not disclose. It may be that, because of petitioner’s skill, experience, and application to his duties, the commission found it unnecessary to interfere with direction of the planning and erection of the bridge. This is immaterial. The important thing is that the right of control was maintained.
Eespondent further argues that petitioner was on a different basis of employment in 1927, after his resignation and reappointment, than he was during the time the bridge was under construction. But the “ title, powers and responsibilities of Chief Engineer ” which he reassumed have never been changed; they existed in 1927 as first set out, and petitioner did not escape them upon his reappointment. While less of his time was required than when the bridge was under construction (which accounts for the reduction in salary) petitioner remained at the command of the commission for as much of his time as might be necessary to perform properly the services demanded of him, whether consultation, the regular inspection of the bridge, preparation of his required reports, or the planning and supervising of repairs or additional construction. In our opinion, there was no change in the basis of his employment and the commission’s right of control was continued.
Respondent also argues that a determination that petitioner was an employee of the commission would be inconsistent with our decision in Leon S. Moisseif, supra, wherein we held that Moisseiff was an employee of the commission, since it appeared that he was under the direction and control of Modjeski, its chief engineer. Such a result does not follow. Obviously one may supervise and direct the work of a subordinate, although himself an employee. Cf. H. A. Underwood, 20 B.T.A. 1117; Hugh Ogden, 24 B.T.A. 1239; affd., 62 Fed. (2d) 334; G. Ridgely Sappington, 25 B.T.A. 1385; Carl Newman Davie, 26 B.T.A. 1007, and cases there cited.

Judgment will be entered for the petitioner.