ROBERT CAREY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 54033, 60432, 67415.   Promulgated December 5, 1934.

*Robert Carey, Esq.*, pro se.
*L. W. Creason, Esq.*, for the respondent.

OPINION.

MATTHEWS: There is presented in these proceedings the sole issue whether the salary of $7,500 a year received by petitioner in the years 1928, 1929, and 1930, from the New Jersey Interstate Bridge

& Tunnel Commission (later known as the New Jersey Holland Tunnel Commission and merged in May 1930 with the Port of New York Authority) should be included in the petitioner's taxable income for those years. The facts are clear and not disputed.

In 1918 the State of New Jersey enacted legislation to extend the system of highways in the state by providing for the construction of a bridge over the Delaware River in conjunction with the State of Pennsylvania and for the construction of a vehicular tunnel under the Hudson River in conjunction with the State of New York. The original acts were amended and supplemented in later years, as it became necessary, in order to carry out the projects. See vol. 2, Cum. Laws of N.J., p. 3692, et seq. Both of these projects were ultimately carried out. The "Holland Tunnel", named for its engineer, built at a cost of about $50,000,000 under the Hudson River, now connects the highway system of New Jersey with that of New York. The history of this great engineering project is so generally known that it is unnecessary to dwell on it here.

The original act of 1918, section 3, as amended by the laws of 1924, chapter 2, is as follows:

3. The commission is hereby authorized to appoint either for itself or in conjunction with the commission or agency of the State of New York; * * * engineers, consulting engineers, assistant engineers and such other employees, clerks and assistants as may be necessary or convenient for carrying on the work of constructing the Hudson River Vehicular Tunnel * * * in conformity with the authority heretofore vested in the commission. It shall also have the sole power either for itself or in conjunction with the New York Commission * * * to fix the compensation, the period and terms of employment, and to define the duties of such engineers, consulting engineers, assistant engineers, employees, clerks and assistants as it shall deem advisable and to pay such engineers, assistants and employees out of the funds made available to it for the purpose of carrying out the work heretofore or hereafter authorized; and it shall also have the sole authority to employ counsel, assistant counsel, or consulting counsel as may be requisite or necessary, either for itself, to protect the independent interests of the commission and the State of New Jersey, or in conjunction with the New York Commission, * * * and to pay such counsel such salary or fees as may be necessary or requisite out of the funds heretofore or hereafter made available to the said commission.

The original New Jersey legislation provided that the legal work of the commission be done by the state attorney general or his deputy, but the increase in the work required a lawyer who could devote more time to it than was possible for regular state officers. The amendment of the original act by the 1924 act, quoted in part above, followed. Counsel was appointed, and when his resignation took place petitioner was named counsel on July 8, 1924. He continued to perform the legal duties required of him by the commission until July 1, 1930, about two months after the merger of the

New York and New Jersey commissions, in the Port of New York Authority.

Respondent contends that petitioner was not an officer or employee of the State of New Jersey, or of a political subdivision of the state engaged in the performance of an essential governmental function, but that petitioner was an independent contractor. He points out the rule that exemptions from taxation must be strictly construed when express, and *a fortiori* strictly, when the immunity is merely implied; and relies on *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, and other cases which will be hereafter considered.

The first question is whether the New Jersey Interstate Bridge & Tunnel Commission, and its successors, exercised governmental functions, for if it did not, we need not consider the second question of petitioner's employment.

The commission was to have " such duties in connection with the providing of interstate bridges and tunnels as shall from time to time be conferred upon it by the Legislature, and shall have all the powers appropriate and necessary for the performance of such duties." It was empowered to enter into contracts in its own name or the name of the state. It had " full power in its name or the name of the State, to acquire, by purchase, gift, grant or condemnation, all lands * * * necessary for the construction of such bridges or tunnels." Further powers for purchase or condemnation of lands were given by the law of 1919, ch. 69. In connection with the Hudson River Tunnel, the commission was authorized to enter into contracts with the State of New York or its agency for building the tunnel, and to provide for the collection of tolls and charges after its completion. Congress authorized such an agreement between New York and New Jersey. The commission, acting for the state, was authorized to accept delegated authority from the President or Congress of the United States. An agreement was entered into by the New Jersey Commission with the New York Commission for the joint construction, operation, and maintenance of the tunnel, under which each state was to pay half of the cost of construction and maintenance and each state was to receive half of the tolls. As to the cost, the agreement provided in Article IV (p. 3714, vol. 2, Comp. Stat. of New Jersey, 1911–1924) :

216–69. *What constitutes cost.* 2. The cost of the tunnel or tunnels shall include the cost of all labor, materials and equipment entering into construction; the cost of any real property or interest therein, hereafter acquired, extinguished or appropriated, together with the actual and necessary expenses in connection with such acquisition, extinction or appropriation; payments made on account of claims for damages of whatsoever kind, for which either State may be liable, arising out of the construction; salaries and expenses of the engineering staff;

any liability arising out of the operation of any Workmen's Compensation Law, resulting from a claim of an employee employed jointly by the parties hereto; premiums paid for insurance, if any, of whatsoever kind, except as hereinafter more specifically provided; also rent for offices maintained by the two commissions and the salaries and expenses of their clerical staffs. (L. 1920, c. 76, p. 143.)

216–70. *Costs incurred by both commissions.* 3. Nothing herein contained shall be construed to include any costs or disbursements for any of the above purposes except such as are incurred by both commissions exclusively in connection with the construction of such tunnel or tunnels, as evidenced whenever so required by the provisions of this contract by resolutions identical in form and substance. (L. 1920, c. 76, p. 144).

The act ratifying the agreement for the construction of the tunnel, in its preamble, states that " The State of New Jersey, acting by and through the New Jersey Interstate Bridge & Tunnel Commission * * * " had entered into such agreement. Each state acquired title to all land within its territorial limits necessary for the tunnel. Under the agreement the two commissions, acting jointly, were given the power to fix, determine, and levy tolls and charges for the use of the tunnel. See, generally, the collected provisions in Cum. Supp. to Comp. Stat. N. J., 1911–1924, vol. 2, pp. 3696–3742. New Jersey imposed a tax (L. 1918, ch. 51, p. 142–147), and authorized two bond issues in the aggregate of $36,000,000 (C.L. 1920, ch. 352, p. 863; L. 1924, ch. 262, p. 677) to raise the necessary revenue, and also used other public moneys to pay its share of the cost of the tunnel construction.

There would seem to be no reason to doubt, after reviewing the legislative sanctions for the commission, that the New Jersey Inter-State Bridge & Tunnel Commission was intended to be an agency of the state, exercising to some extent sovereign functions. Its powers go far beyond the franchise powers occasionally conferred on public utilities. Here the social and economic welfare of the people of New Jersey and of New York demanded readier means of intercourse than could be had by river ferries. The public interest in such a project is obvious. To accomplish this public end required the exercise of sovereign powers to supersede the conflicting interests of individual property holders and the employment of public funds to make possible such a vast undertaking. These powers, to the extent necessary, were conferred by New Jersey on its commission.

In *Leon S. Moisseiff*, 21 B. T. A. 515, we held that the Delaware River Bridge Joint Commission and the Port of New York Authority were respectively governmental instrumentalities of Pennsylvania and New Jersey, and of New York and New Jersey, and the compensation received by the petitioner for services performed as an employee thereof was held to be exempt from income tax. We can find no reason to distinguish the present case. Cf. *Thomas*

*Fitzgerald*, 29 B. T. A. 1113. Likewise in *Ralph Modjeski*, 28 B. T. A. 1051; 75 Fed. (2d) 468, we held the Delaware River Bridge Joint Commission a governmental instrumentality of Pennsylvania and New Jersey, and the taxpayer, who was chief engineer for the commission, an employee of the commission, and his salary received as such, exempt. So also in *George H. Harlan*, 30 B. T. A. 804, we held exempt the salary of counsel for the Golden Gate Bridge & Highway District, quoting with approval the *Moisseiff* case to the effect that "the construction of bridges has always been regarded as an essentially governmental function." In the same case we pointed out additional factors as of importance, and they are present in the case at bar, that the district had the power to fix tolls, and that the bridge was part of the highway system of the state.

Finally, it may be added that since a state makes a compact with another only in its sovereign capacity, and to do so under the Constitution (Art. I, sec. 10) must first obtain the consent of Congress, an agency employed for such a purpose, as the New Jersey Interstate Bridge & Tunnel Commission was here, must necessarily be empowered to exercise governmental functions.

We turn now to the next question, Was petitioner an officer or employee of the commission, or merely an independent contractor?

The New Jersey law of 1918, as amended in 1924, provided that the commission should have the sole authority to employ counsel and to pay such counsel's salary out of the commission's funds. Moreover, the salary of counsel, unlike those of the engineering staff, did not constitute part of the cost of the tunnel to be borne by the two states jointly, but was paid by the State of New Jersey alone. See Article IV of the agreement between New Jersey and New York quoted above.

Here, as already said, petitioner took an oath of office. He was on a pay roll, which he had to sign. Only the commission's secretary was on the same pay roll. His duties were not prescribed by statute, but as they embraced all the legal work which the commission had to do, however varied in character, such a statutory description would seem superfluous. He was performing the same work which had earlier been delegated to the attorney general of the state but which became too onerous for that officer to cope with in addition to his other duties. The commission's counsel was appointed for no definite term, but his duties were continual and required for several years far the greater part of petitioner's time. His salary was fixed on an annual basis and had no relation to the amount of time which petitioner spent on commission business. In this relation, respondent's insistence that petitioner kept memoranda of his legal work for the commission indicates nothing more to us than

that he was a methodical man, and cannot in the circumstances suggest that it was done in order to afford petitioner a basis on which to calculate his fees. Petitioner had kept such memoranda of all legal work done since he first began to practice law.

The Supreme Court said, in *Louisville etc. Railroad Co.* v. *Wilson*, 138 U. S. 501, 505:

> The terms "officers" and "employees" both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employee. They imply continuity of service, and exclude those employed for a special and single transaction.

Here petitioner gave all the time that the commission demanded to its legal work, and the extent of his service appears when it is recalled that the commission, notwithstanding its multifarious work, found it unnecessary to employ additional counsel. During the years before us he was in the regular and continual service of the commission. The fact that petitioner also maintained a law office seems to us immaterial. Cf. *United States* v. *Butler*, 49 Fed. (2d) 53; *Burnet* v. *Livezey*, 48 Fed. (2d) 159.

Respondent's contention that petitioner was not an employee because the commission did not wholly control petitioner's legal work is readily disposed of. It was not necessary that there should be complete and detailed supervision of all his work. He was generally at the call of the commission; that he had to rely on his own legal knowledge and experience is immaterial. *United States* v. *Butler*, *supra*. Petitioner here was employed by an agency of the State of New Jersey used by the state in extending its highway system, his employment was authorized by statute, he had a fixed salary, signed a pay roll and was generally at the call of the commission; he had a free discretion to perform his professional duties as he liked and maintained his private law office, but his services for the commission were regular, continual, and a paramount charge on his time, and in their performance generally he was the servant of the commission, and not an independent contractor. He took an oath of office, had the responsibility and much of the dignity of a state officer. In all these circumstances, we think it clearly appears that petitioner was not an independent contractor as defined in *Metcalf & Eddy* v. *Mitchell*, *supra*, but a state employee performing an essentially governmental function.

We hold petitioner's salary of $7,500 a year, therefore, for all the years in question, immune from Federal taxation and find no deficiency in the three proceedings before us.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*