*1245 OEINION.
SteRnhagen :
The question raised by this proceeding is whether the compensation received by an officer or employee of the Port Authority for services regularly rendered is subject to Federal income tax. The compensation was held constitutionally immune in Leon Moisseif, 21 B. T. A. 515, and Robert Carey, 31 B. T. A. 839. Modjeski, an engineer of the Port Authority, was held taxable as an independent contractor. Commissioner v. Modjeski, 75 Fed. (2d) 468; certiorari denied, 295 U. S. 764. Commissioner v. Ten Eyck, 76 Fed. (2d) 515, involved directly the Albany Port District, but the court expressly dealt with the Port Authority as of the same character. Commissioner v. Harlan, 80 Fed. (2d) 660, held immune the pay of an attorney of the Golden Gate Bridge & Highway District at San Francisco, Thus the question might be regarded as fairly well closed for this Board. But the Government says that for one reason or another each of those decisions lacks authoritative force to control the general question. It now presents these cases as complete both in facts and argument to serve as a definitive test. The evidence has been stipulated at length and also given in the testimony of Port Authority employees.
The Port Authority is organized for and operating in the traditionally sovereign function of protecting, improving, and developing the Port of Hew York; and all its activities are directed to and are incident to that end. The dual nature of our government requires that the state and Federal governments shall be adjusted to each other to produce the greatest power for each with the least friction. The problem is not one of logical or legal absolutes, but of the promotion of a smooth practical interrelation of the two in recognition of their several sovereign necessities. Neither may so exercise its powers as to encroach upon the necessary or traditional sovereign functions of the other; and, since this doctrine is firmly established, it is not to be supposed that either is attempting to do so. The revenue act and its broad definition of income may not be regarded as an attempt to tax the salary of the state executive although it may be *1246 literally within its terms. The Attorney General expressed this opinion in 1919, 31 Op. A. G. 441. The immunity of such salary from Federal tax is inherent in the sovereignty of the state. If it inures to the benefit of the individual, this is but collateral to the effect upon the state. To him, it is not a matter of independent personal right, but of perquisite of his office.
We are bound, when the Circuit Court of Appeals has held, in affirmance of our own earlier decisions, that the Port Authority and other organizations similarly engaged are performing a traditionally sovereign function, to apply the doctrine and hold the pay of its employees to be exempt from Federal tax. Commissioner v. Ten Eyck, supra; Leon Moisseiff, supra; Robert Carrey, supra; Commissioner v. Harlan, supra. That the Ten Eyck case is regarded by the court as a holding that port development is a traditionally sovereign function is fortified by its more recent opinion in Brush v. Commissioner, 85 Fed. (2d) 32.
The argument is pressed that the immunity is lost when the activity of the state is one involving interstate commerce or navigation or is carried on under an interstate compact requiring Congressional consent. The argument is not new. It was considered and rejected in Commissioner v. Harlan, supra, and there is enough in the opinion and briefs in the Ten Eyck case to show that the Federal power over interstate commerce and navigation were not overlooked. But to deal with the issue squarely, we are of opinion that the development of the port may not be interfered with by Federal tax even though the interstate and foreign commerce passing through the port and upon its highways, bridges, and tunnels is subject to Federal regulation, even though the navigable waters under its bridges and over its tunnels are under Federal control, and even though the underlying interstate compact required the consent of Congress. To this may be added that there is no reason to regard the revenue act as a means used by Congress to regulate interstate commerce, to control navigation, or as an implied condition of its consent to the interstate compact. Cf. United States v. Butler, 297 U. S. 1. Such a view, if accepted, might go so far, for example, as to subject the employees of a state highway department or public service commission to Federal tax under the present law. It would mean that in making an interstate compact the states would be surrendering the very sovereignty which the Constitution takes for granted and upon which the compact is founded — and this, not directly by an express condition in the resolution of consent, but by an implied relation between the general terms of the consent and the broad terms of the revenue act. Is it to be supposed that in the blanket consent to interstate compacts for crime prevention (TJ. S. C. A., title 18, § 420) *1247 lurks a power to tax the state police officers who are employed under the compact?
Relying upon Commissioner v. Powers, 68 Fed. (2d) 634, the argument is made that the Port Authority is engaged in proprietary functions for profit with the effect of withdrawing sources of revenue from the Federal taxing power*. This is said in respect of the rents from the Inland Terminal Building, more particularly the upper stories privately occupied; of the tolls from the bridges and tunnels; and of the destruction of private ferry competition. If these were independent profit-making ends in themselves, the argument would be more engaging. But these several operations, even though the revenues produced are substantial, are but incidental to the great and comprehensive sovereign project of improving the port and terminal facilities of the port district. Bush Terminal Co. v. City of New York, 152 N. T. Misc. 144. The Inland Terminal Building was not constructed to produce rent as a profit on investment, but to provide a more efficient terminal and thus expedite traffic and relieve highway congestion. The bridge and tunnel tolls and the reduction of traffic on the private ferries were incidental to the governmental project of providing highways to facilitate traffic and reduce port and harbor congestion in the common public interest. It has not heretofore been suggested that the maintenance of a free state highway was a proprietary function subject to Federal tax because it diminished or destroyed the traffic on an existing private toll road. State public school teachers are not regarded as taxable because a new public school may reduce the taxable profits of an existing private school. The essential question of the preservation of the state’s sovereign powers in the interplay of our dual government may not be lost sight of by a pursuit of each detail of the method of exercising it as if it stood alone with a different history and a different purpose. Burnet v. Coronado Oil & Gas Co., 285 U. S. 393; University v. People, 99 U. S. 309; G. C. M. 13745, XIII-2 C. B. 76. Cf. Trinidad v. Sagrada Orden de Predicadores, 263 U. S. 578. It may be doubted whether the Port Authority has any right to engage in business for the sole or primary purpose of making profit; but not until it does so will the effect upon its tax immunity require consideration.
We hold that the Port Authority is engaged in the performance of a sovereign function of each of the states of New York and New Jersey and that the compensation received by its employees is exempt from the Federal income tax. This is primarily because of the constitutional right of the state to be free from Federal interference in the exercise of its sovereign powers. We hold further that even if the Port Authority’s functions are not constitutionally immune from *1248 interference by Federal taxation, the power of the Federal Government to regulate commerce and control navigable waters has not been exercised by Congress through the imposition of tax in the general provisions of the revenue act, nor has such tax been provided for as an implied condition of consent to the interstate compact.
Reviewed by the Board.

Judgment will be entered for the 'petitioners.

Mellott dissents.