JAMIMA PLATT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DORA M. MEHERIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

P. W. MEHERIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 78930, 80422, 81035. Promulgated February 11, 1937.

*Philip Selig, Jr., Esq.*, for petitioner in Docket No. 78930.

*William T. Sweigert, Esq., U. S. Webb, Esq.*, and *Lucas E. Kilkenny, Esq.*, for petitioners in Docket Nos. 80422 and 81035.

*W. H. Payne, Esq.*, and *Owen W. Swecker, Esq.*, for the respondent.

OPINION.

SMITH: The principal issue in these proceedings is whether the salaries received by the petitioner, P. W. Meherin, in 1931 and 1932, and by the husband of petitioner Jamima Platt in 1932, are exempt from Federal income tax by reason of the constitutional limitations on the powers of the Federal Government to levy taxes on instrumentalities of the states. Primarily, our question here is whether the Board of State Harbor Commissioners of the State of California falls within that class of state instrumentalities which has been judicially recognized as lying beyond the taxing powers of the Federal Government. If this immunity from taxation exists, it necessarily extends to the compensation paid to the employees of the instrumentality. *Collector* v. *Day*, 11 Wall. 113; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514.

We have had occasion to consider this question in substantially the same form as it is presented here in several prior cases. The most closely related of these, as to facts, is *Peter G. Ten Eyck*, 29 B. T. A. 1113, in which we held that the Albany Port District Commission was engaged in performing a governmental function of the State of New York and that the salaries which it paid to its employees were immune from Federal income tax. On appeal to the Circuit Court of Appeals for the Second Circuit the Board's decision was affirmed in *Commissioner* v. *Ten Eyck*, 76 Fed. (2d) 515. In its opinion the court said:

* * * Subsection 15 of section 5, as amended by Laws 1929, c. 293, § 2 [Laws of New York], provided that "'facilities,' 'port facilities,' 'terminals,' and 'terminal work'" should include "wharves, docks, piers, terminals, railroad tracks on terminals, cold storage and refrigerating plants, warehouses, elevators, and such property real or personal," as would be used in connection therewith. The Commission did not operate the grain elevator erected thereon but leased it, as it did a molasses mill. It did operate the railroad, and charged rates authorized by the Interstate Commerce Commission. But we think that this terminal was intended as an instrument of government rather than of commerce only. In providing it and operating it, the state of New York was engaged in a usual governmental function as distinguished from a proprietary function.

*Montgomery B. Case*, 34 B. T. A. 1229, also involved facts similar to those in the instant proceedings. We there held, citing our earlier decisions in *Leon S. Moisseiff*, 21 B. T. A. 515, and *Robert Carey*, 31 B. T. A. 839, that the compensation of officers and employees of the Port of New York Authority was immune from Federal income tax. In our opinion we said:

We are bound, when the Circuit Court of Appeals has held, in affirmance of our own earlier decisions, that the Port Authority and other organizations similarly engaged are performing a traditionally sovereign function, to apply

the doctrine and hold the pay of its employees to be exempt from Federal tax. *Commissioner* v. *Ten Eyck, supra; Leon Moisseiff, supra; Robert Carey, supra; Commissioner* v. *Harlan, supra,* [80 Fed. (2d) 660]. That the *Ten Eyck* case is regarded by the court as a holding that port development is a traditionally sovereign function is fortified by its more recent opinion *Brush* v. *Commissioner,* — Fed. (2d) — (C. C. A., 2nd Cir., July 13, 1936).

In *George H. Harlan,* 30 B. T. A. 804; affirmed by the Circuit Court of Appeals for the Ninth Circuit in *Commissioner* v. *Harlan,* 80 Fed. (2d) 660, we held that immunity from Federal income tax extended to the compensation of an officer of the Golden Gate Bridge and Highway District of California. In its affirming opinion the court distinguished *Helvering* v. *Powers,* 293 U. S. 214, in which the Supreme Court held that in operating the Boston Elevated Railway Co. the State of Massachusetts was not exercising a "usual" governmental function and that the compensation paid to officers and employees so engaged was not immune from Federal income tax.

In *Helvering* v. *Powers, supra,* it was said that the "immunity from federal taxation is a question which compels consideration of the nature of the activity." In *United States* v. *California,* 297 U. S. 175, the Court said:

* * * Hence we look to the activities in which the states have traditionally engaged as marking the boundary of the restriction upon the federal taxing power. * * *

The courts have held that the development and maintenance by a state of port and harbor facilities within its boundaries is a traditional and essential governmental activity. *Commissioner* v. *Ten Eyck, supra; Commissioner* v. *Harlan, supra; Bush Terminal Co.* v. *City of New York,* 152 N. Y. Misc. 144; 273 N. Y. S. 331. The Supreme Court of California so ruled with respect to the Board of State Harbor Commissioners in *Denning* v. *State,* 123 Cal. 316; 55 Pac. 1000, where it said:

* * * The fact that the board is authorized or required to collect tolls and charges for dockage and wharfage to such extent "as will enable the commissioners to discharge the duties required of them by the act" does not affect its character as a governmental agency. * * *

It is argued that some of the functions of the various units of the Harbor Commission partook of a business or proprietary character. This angle of the question also was discussed in *Montgomery B. Case, supra,* where we said:

Relying upon *Commissioner* v. *Powers,* 68 Fed. (2d) 634, the argument is made that the Port Authority is engaged in proprietary functions for profit with the effect of withdrawing sources of revenue from the Federal taxing power. This is said in respect of the rents from the Inland Terminal Building, more particularly the upper stories privately occupied; of the tolls from the bridges and tunnels; and of the destruction of private ferry competition. If these were independent profit-making ends in themselves, the argument

would be more engaging. But these several operations, even though the revenues produced are substantial, are but incidental to the great and comprehensive sovereign project of improving the port and terminal facilities of the port district. *Bush Terminal Co.* v. *City of New York*, 152 N. Y. Misc. 144. The Inland Terminal Building was not constructed to produce rent as a profit on investment, but to provide a more efficient terminal and thus expedite traffic and relieve highway congestion. The bridge and tunnel tolls and the reduction of traffic on the private ferries were incidental to the governmental project of providing highways to facilitate traffic and reduce port and harbor congestion in the common public interest. * * *

Further discussion of the question as presented on the facts here could add nothing to what has been said in the cases referred to above. At least until the courts have established a ruling at variance with those cases, the question is foreclosed to the Board.

We hold that the Board of State Harbor Commissioners of the State of California is an instrumentality of the state engaged in a governmental function and that the compensation paid to its officers and employees is immune from Federal income tax.

As to the remaining issue the question raised is whether the cash dividend distribution in the amount of $7,659 which the petitioner, P. W. Meherin, received from the Barrymore Concrete Mixer Co. on May 6, 1931, was an ordinary dividend and therefore subject to credit against net income for the purpose of the normal tax, as contended by the petitioner, or was a liquidating dividend, as contended by the respondent.

The evidence clearly indicates, and we have found as a fact, that the dividend in question was not a liquidating dividend. In his brief the respondent states:

In view of the evidence adduced at the hearing the respondent does not desire to submit an argument in connection with the petitioners' second assignment of error.

We regard the statement made by the respondent in his brief as conceding that this is the import of the evidence of record. We are of the same opinion.

*Judgments will be entered under Rule 50.*